THE PEOPLE OF THE STATE OF CALIFORNIA v. ANDREW B. McCREERY.

CURATIVE POWER OF THE LEGISLATURE.—The foundation of proceedings for apportioning and collecting a tax upon property is the valuation, which, under the rule of the Constitution, must be made by the Assessor, and the Legislature cannot supply this defect, if it existed, by any curative Act. But all the details of the proceeding in making the valuation are subject to legislative control, and if error has intervened, it is subject to the curative power of the Legislature, provided a valuation, good in substance, has in fact been made by the Assessor, though in mode, form, etc., not conforming to the statute.

ASSESSMENT OF PROPERTY.—The Assessor of the City and County of San Francisco for the fiscal year 1865-6 assessed the property of the defendant for the purposes of State and municipal taxation, which assessment was entered in the proper assessment roll as follows : " Money" valuation " 5,000," " Money loaned " valuation " 125,000," and over the column of valuations is the word " dollars." The only money loaned by defendant and the only solvent debts due him during said fiscal year consisted of the said one hundred and twenty-five thousand dollars, which was loaned by him to L., and secured to be paid by a deed of trust. Held, first, that said assessment was made under section four of the General Revenue Act of 1857, as amended by sections one and two of the Act of March 6th, 1863, (Stats. 1864, p. 35 ;) second, that said assessment to defendant was a sufficient compliance with said Acts as to the classification and description of his property ; and, third, if said assessment were deemed in said respects, or either of them, defective, such defect would be cured by the Act of April 2d, 1866, (Stats. 1865-6, p. 831.)

LEVY OF STATE AND MUNICIPAL TAXES IN SAN FRANCISCO.—An Act amendatory of the Consolidation Act, passed in 1866, (Stats. 1865-6, p. 436,) provides that " On or before the first Monday of May, annually, the Board of Supervisors of said city and county shall levy the amount of taxes for State, city, and county purposes required by law to be levied upon all property not exempt from taxation." The order levying said taxes for said year, under which said assessment of defendant's property was made was passed by said Board on the first Monday of May, and only received the approval of the Mayor on the following day. Under the Consolidation Act said approval was necessary to give force to said order. The said Revenue Acts require the annual levy of taxes to be made on or before said first Monday of May. Held, first, that said order was invalid,

Points decided.

and said taxes were not legal, so far as they depended on the action of said Board; second, that said State taxes for their levy did not depend on the action of said Board, but rested upon the several statutes providing for their levy, but that the levy of said city and county taxes did depend on said order, and were illegal.

ACTION OF BOARD OF EQUALIZATION.—Where the statute provides that the Board of Equalization "shall meet on the first Monday in June in each year for the correction of errors in the assessment of personal property, and shall continue in session from time to time until such errors brought to their notice shall be corrected; provided, however, they shall not sit after the third Monday in June;" and where such Board met and held sessions on the first and third Mondays of June only, but between said sessions a committee of the Board received applications for the correction of assessments, and took testimony, all of which was, on said last session, submitted to and acted on by the Board, and when the Board closed its session it did not appear that any valuation of personal property was erroneous : *held*, that this was a proper and legal mode of action on the part of said Board.

DOUBLE TAXATION.—The lender of money is not subjected to double taxation by reason of the statutory provision requiring payment of taxes on money loaned by him, and on solvent debts due him over his own indebtedness; whether said statutory provision results in imposing double taxation upon the borrower of money, when security by way of mortgage or otherwise is given, does not arise in this case.

TAXES.—Taxes are charges, imposed by or under the authority of the Legislature, upon persons or property subject to its jurisdiction.

POWER OF TAXATION.—The power of taxation is a necessary incident to sovereignty, and under our system of government it pertains to the legislative department. A tax must have its origin in a law enacted for that purpose.

IDEM.—The power of the Legislature over the whole subject of taxation, including the property to be charged, the amount of the tax, the mode of levying, assessing and collecting it, etc., is as ample as over any other matter that is a proper subject of legislative action. The provisions of section thirteen, Article Eleven of the Constitution are limitations, and not grants of power; but as limitations, are, according to their terms, mandatory upon the Legislature.

CONSTITUTIONAL LIMITATIONS ON THE POWER OF TAXATION.—Under the provisions of section thirteen, Article Eleven of the Constitution, to wit: "Taxation shall be equal and uniform throughout the State," and "All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law :" *held*, first, that by the words "all property in this State" is meant all private property, or all property other than that belonging to the United States or this State, or that which is public property; second, that the words "taxation shall be equal and uniform throughout the State" relate to taxation of property, and that the Legislature has no power to exempt any private property in this State from taxation; and, third, that the rate of taxation on property, for State purposes, shall be uniform throughout the State. *People* v. *Coleman*, 4 Cal. 46, and *High* v. *Shoemaker*, 22 Cal. 363, so far as in conflict herewith, are overruled.

CONSTITUTIONALITY OF REVENUE ACTS—EXEMPTION OF PRIVATE PROPERTY FROM

55

TAXATION.—The provisions of the second section of the General Revenue Act of 1857, as amended in 1859, (Stats. 1859, p. 343,) and the Act fixing the rate of taxation for State purposes, passed April 2d, 1866, (Stats. 1865–6, p. 786,) so far as they provide for the exemption of any private property within this State from taxation, are unconstitutional and void. Said Acts are to be read and construed as if such void provisions had never been incorporated in them.

IDEM.—Notwithstanding said provisions exempting private property from taxation are void, yet the residue of said Acts are complete in themselves, and furnish a valid and plain rule of action, which must be enforced as the authentic expression of the legislative will.

IDEM—DUTY OF ASSESSORS.—It is the duty of Assessors under said Acts to assess all property in their respective districts, counties, etc., subject to taxation, which comprehends all property except that which may be denominated, generally, public property.

IDEM—EFFECT OF OMISSION IN PART OF HIS DUTY.—The omission of an Assessor to assess certain parcels of property subject thereto, whether arising from a misapprehension of the law, as by giving effect to void provisions of a statute, or a mistake of fact, will not invalidate his general assessment list.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This was an action by the people of the State against defendant to recover the sum of eight thousand one hundred and sixty-four dollars and fifty cents, alleged to be due for taxes on certain personal property, levied in the City and County of San Francisco, for the fiscal years 1865–6 and 1866–7. The personal property on which the taxes were levied consisted of one hundred and twenty-five thousand dollars loaned at interest by defendant McCreery to James Lick, and secured to be repaid by a deed of trust of certain real property situated on the corner of Sutter and Montgomery streets, known as the "Lick House."

In the Court below the trial was by the Court without a jury, upon an agreed statement of facts coupled with a stipulation that defendant could interpose any defense he might choose. The defendant had judgment, and plaintiff appealed therefrom and from an order denying a motion for a new trial.

The other facts and the issues presented by the pleadings and on appeal are sufficiently stated in the opinion of the Court.

*Nathan Porter*, and *S. W. Holladay*, for Appellant, argued:

That the levies for both fiscal years were at least valid as to the State taxes assessed to defendant, because levied under the several statutes providing for the levy and collection of State taxes, and did not, therefore, depend for their validity on the orders of the Board of Supervisors of the City and County of San Francisco, and plaintiff was therefore entitled to judgment therefor. That the validity of the tax assessed to defendant was unaffected by the mode of equalization adopted by the Board of Equalization of said city and county: first—because it does not appear that the assessment of defendant's personal property, or, indeed, any assessment of personal property made in said city and county, was found erroneous after the close of the session of said Board; and, second—because by the mode adopted the work of equalization was solely performed by said Board, and was legal and proper. They cited Statutes of California for the years: 1857, p. 325; 1859, p. 343; 1860, p. 365; 1861, p. 422; 1862, pp. 57, 509, 560; 1863, pp. 35, 30, 769; 1863–4, pp. 104, 189; 1865–6, pp. 5, 520, 795, 831, 803, 786. That the assessment, as made by the Assessor, by way of description and classification of property listed to the defendant, was sufficient and legal; and cited 10 Cal. 316; 15 Cal. 294; 19 Cal. 512; 26 Cal. 372. That the levy of taxes on defendant's property for the fiscal year 1865–6 is legalized as made by the statute passed April 2d, 1866, page eight hundred and thirty-one, so that it is, for this reason, too late to question the first part of plaintiff's claim for the fiscal year 1865–6; and cited *People* v. *Holladay*, 25 Cal. 300. That respondent's argument as to the unconstitutionality of the whole Revenue Laws of the State, because of the humane exemption of certain property of widows, etc., is answered by various adjudicated cases in this State; and cited 17 Cal. 554; 18 Cal. 681.

*Haight & Pierson*, for Respondent.

First—The levy for the years 1865–6 was void for want of apportionment. (Stats. 1865–6, p. 436; *Hardenburg* v. *Kidd*, 10 Cal. 402; *Johnson* v. *Colburn*, 36 Vt., 1 Veazy, 693; *Lacy* v. *Davis*, 4 Gibbs, Mich., 140.)

Second—The assessments for both years are void, because not made at the time required by law. (See cases last cited.)

Third—No legal action of the Board of Equalization was had upon the assessment rolls. (Hittell's Laws, Art. 6,350.)

Fourth—The duplicate rolls for both years blend together the State, city and county taxes in one total, contrary to the plain requirements of the statute. (*Hurlbut* v. *Butenop*, 27 Cal. 50; *Lawrence* v. *Fast*, 20 Ill. 341; *Lane* v. *Bommelman*, 21 Ill. 147; *Eppinger* v. *Kerby*, 23 Ill. 523.)

Fifth—The assessments are void for want of sufficient description, and because the subject assessed is not the one made liable by the Revenue Act. (Hittell's Laws, Arts. 6,299, 6,300; *Falkner* v. *Hunt*, 16 Cal. 167; *State* v. *Falkinburg*, 3 Greene, N. J., 326; 3 Harrison, 12; 1 Pick. 482.)

Sixth—The Revenue Act is void, because it purposely contravenes the constitutional requirements of equality, uniformity and universality. (Const., Art. XI, Sec. 13; Const. of Texas, from which ours in this respect is mainly borrowed; *Hunaker* v. *Wright*, 30 Ill. 146; *Vaneville* v. *Richard*, 5 Ohio, N. S., 589; *Robinson* v. *Bidwell*, 22 Cal. 379; *Lathrop* v. *Mill*, 19 Cal. 513.)

Seventh—The provision taxing money loaned on mortgage is, in effect, the imposition of an unequal and double tax upon one class of property, and is unconstitutional and void. (Hittell's Laws, Arts. 6,289, 6,299, 6,300; *Koch* v. *Briggs*, 14 Cal. 256; *Knowlton* v. *Board of Supervisors*, 9 Wis. 410; *State* v. *Merchants' Ins. Co.*, 12 La. Ann. 802; *Attorney General* v. *Winnebago L. & F. Co.*, 11 Wis. 35; 14 Mo. 237; 2 Ark. 299; 2 Kent's Com. 331.)

By the Court, RHODES, J. :

The Legislature of 1865–6, in the exercise of its curative power over erroneous and defective proceedings under the Revenue Laws of the State—a power which had been liberally exercised at many of the preceding sessions—passed the Act of the 2d of April, 1866, to legalize assessments and provide for the collection of delinquent taxes.    (Stats. 1865–6, p. 831.)

The main provisions of the first section are substantially the same as those of section one of the Act of 1861 (Stats. 1861, p. 471) and of section one of the Act of 1864 (Stats. 1863–4, p. 359.)    The first of those Acts was under consideration in *People* v. *Holladay,* 25 Cal. 300; and the second in *People* v. *S. F. Savings Union,* 31 Cal. 132; and in each case the healing power of the Legislature over official proceedings relating to taxation, as manifested by those Acts, was recognized and affirmed.    Although this doctrine does not meet with universal approbation, the exercise of such power has been so often upheld, that it would be profitless to renew the discussion at this time.

The doctrine of *People* v. *Holladay* was limited, in one respect, by that of *People* v. *San Francisco Savings Union.*    It was held in the latter case, upon the authority of *People* v. *Hastings,* 29 Cal. 449, that the very foundation of proceedings for apportioning and collecting a tax upon property, was the valuation; that such valuation must, under the rule of the Constitution, be made by the Assessor, and that the Legislature could not supply this defect, if it existed.    All the details of the proceeding in making the valuation are subject to legislative control; and, under the authority of the above cases, if error has intervened, it is subject to the curative power of the Legislature, under the same principles that are applicable to the proceedings subsequent to the valuation. But there must be a valuation in fact, made by the Assessor, and good in substance, though not conforming to the statute in matters of mode, form, etc.

The counsel for the defendant hold, as we understand them, that the assessment roll was made under the provisions of the Act of May 9th, 1862, (Stats. 1862, p. 509,) and of the Act of March 6th, 1863 (Stats. 1863, p. 35.) We do not agree with the learned counsel in respect to the Act of 1862. An examination of the multitudinous Revenue Acts applicable to San Francisco—a part general and a part special, with provisions incongruous, conflicting, and sometimes absurd—is not so attended with pleasure that it will be unnecessarily undertaken. The result of our exploration is far from being satisfactory, for we are not sure that we are able to discover the particular provision applicable to any particular point in controversy.

The first section of the Act of May 9th, 1862, prescribing the manner in which the assessment roll of personal property shall be made by the Assessor—directing him to enter the names of the persons, etc., assessed, and the amount of the tax, without requiring him to enter the property or its valuation—probably repealed all previous provisions defining the manner of making such roll; but this provision, whatever may have been its meaning or effect, was superseded by section one of the Act of March 6th, 1863, (Stats. 1863, p. 35,) amendatory of the Act of 1859, (Stats. 1859, p. 346,) which latter Act was amendatory of the General Revenue Act of 1857—the Act which, with its amendments, became applicable to San Francisco alone. Section four of the Act of 1857, as amended in 1863, provides for the making of the assessment roll of personal property, and directs the Assessor, among other things, to set down in a separate column, "all personal property taxable to each [person, etc.] under the classification provided for in section two of this Act." The second section of the Act of 1859 is an amendment of the third section of the Act of 1857. The last amendment of the third section of the Act of 1857, which we find, was passed in 1862. (Stats. 1862, p. 57.) The section divides personal property into nine classes. The property assessed in this case falls within the fourth class, to wit: "All money

at interest or loaned, whether secured by pledge, mortgage, or otherwise; all solvent debts, exceeding what may be due from such person, corporation, association, or firm."

The defendant contends that as this class is divisible into seven species of property, it was the duty of the Assessor to state the particular species of the property which may be entered as of this class, together with its valuation; and in support of this position, reliance is placed on *Falkner* v. *Hunt,* 16 Cal. 167. At the time the assessment was made, which was under consideration in *Falkner* v. *Hunt,* section three of the Act of 1857 did not prescribe any classification of personal property, and the Court held that it must be described in the assessment roll by its different species in manner defined in section five of the Act. One object of the amendment of section three, in 1862, was to enable the taxpayer and the Assessor to group the property under the classification therein specified; at least, if that was not the object, we are at a loss to understand what was the purpose of the classification. A description with the minuteness and particularity contended for by the defendant would be prolix and cumbersome, and would serve no useful purpose. Take the second class: " All stocks of goods on hand, all goods, wares, merchandise and chattels of every description." The same rule that would require the Assessor to specify in different items, money loaned secured by pledge, money loaned secured by mortgage, money loaned secured by deed of trust, or by the obligation of a third person, or other security, would require the Assessor to give the description of each chattel falling within that class which was not included within " stocks of goods." The Legislature could not have intended so useless a proceeding. The only reason why a particular description of the property assessed may be required by the person assessed, is that he may know whether it has been properly valued. It is admitted " that the only money loaned out by the defendant and the only solvent debts due him during said fiscal years was the one hundred and twenty-five thousand dollars, for the taxes upon

which this suit is brought, and is the one hundred and twenty-five thousand dollars loaned by the defendant to one James Lick, secured to be paid by a deed of trust," etc. As a matter of fact, the defendant was not misled, and could be under no misapprehension as to the meaning of the assessment. (*People* v. *Home Insurance Company*, 29 Cal. 549; *People* v. *Empire Gold and Silver Mining Company*, 33 Cal. 171.) It certainly was money loaned, and it was also a solvent debt.

The term "solvent debt" duplicates all the other species of property mentioned in that class, in the same manner that "chattels" does all the personal property mentioned in the section. Treating the property as a solvent debt, we see no necessity for adding that the amount is in excess of the owner's indebtedness, for it is only the excess that is taxable. But regarding money loaned as the more specific and proper designation, was it necessary also to state the security? Suppose that instead of being included in one loan, the one hundred and twenty-five thousand dollars had in fact been loaned to one hundred and twenty-five different persons in sums of one thousand dollars each, and that each borrower had given security, amongst which was to be found all the forms indicated by the words of the statute: "Whether secured by pledge, mortgage or otherwise"—if "otherwise" means other forms of security. The position taken by the defendant would require the Assessor to state each debt and the nature of the security. This would increase the roll to dimensions beyond all reason, and we think to very little useful purpose. In *Falkner* v. *Hunt* it is said that "money loaned" would be a sufficient description. And we think that is the more apparent, since property is classified by the statute, and the taxpayer is required to make his statement in that form. The classification would be useless unless brief mention of the property in the roll would be sufficient.

If there is still any doubt about the sufficiency of the description under the provisions of the statute, the curative Act we first referred to corrects all errors of mere mode and

form—the roll showing that the property of the defendant was entered and valued. The property is described in the roll, with its valuation, as follows: "Money" valuation, "5,000." "Money loaned" valuation, "125,000," and over the column of valuations is the word "dollars," indicating the meaning of the figures in the column. The requirement of the Constitution, that the valuation shall be made by the Assessor, does not, necessarily, imply that a minute or full description shall be given in the roll. The terms and manner of description are the proper subject of legislative action, and may be made as general as it was by the Revenue Act of 1861—"personal property"—which was upheld in *People* v. *Sneath*, 28 Cal. 612. This disposes of all the points in respect to the assessment for 1865–6, which we think it necessary to notice.

In the assessment roll for the fiscal year 1866–7, the property and the valuation is the same as the second item in the roll of the previous year. There is no curative Act to legalize the assessments for that year, and for the sufficient reason that there has been no session of the Legislature since the assessments were made.

Objection is made to the levy of the tax. The authority to levy the tax, so far as the Board of Supervisors is concerned, is found, not in the Revenue Laws, but in an amendment, passed in 1866, to the Consolidation Act. (Stats. 1865–6, p. 436.) The Act provides that "on or before the first Monday of May, annually, the Board of Supervisors of said city and county shall levy the amount of taxes for State, city and county purposes required by law to be levied upon all property not exempt from taxation." The order levying the tax was passed by the Board of Supervisors on the first Monday of May, but received the approval of the Mayor on the following day. There might have been no objection to the order on the point of the time of its passage, had not the authority for its entry been unfortunately inserted in the Consolidation Act, instead of some of the

56

numerous Revenue Acts; but the Consolidation Act (Sec. 68) provides that every ordinance or resolution of the Board of Supervisors levying a tax shall, before·it takes effect, be presented to the Mayor for his approval, etc. Discretionary power to levy the tax before the specified day is expressly given, and that, by implication, is a denial of such power after that day. Without further discussion of the point, we hold the provision to be peremptory. (*Marsh* v. *Chesnut*, 14 Ill. 223; *Billings* v. *Detten*, 5 Ill. 218; *Thames Manufacturing Company* v. *Lathrop*, 7 Conn. 550, and cases cited; Blackwell on Tax Titles, 156.) As illustrative of the legislative intent, it may be added that on numerous occasions the time· for making the levy by the Board has been expressly extended by law. The ordinance, not having taken effect on or before the first Monday in May, was invalid, and the tax was not legal, so far as it depended on the action of the Board of Supervisors. If there were taxes for city and county purposes that became an annual charge without a re-levy, they were not impaired by the failure of the Board to re-levy such taxes. A new curative Act will be necessary, in order to remedy the omission of the Board of Supervisors. In view of the present condition of the Revenue Laws, and the repeated mistakes and errors in their administration, would it not be better, instead of granting, each session, as heretofore, a large number of legislature pardons, to cover the whole ground by a legislative indulgence?

The Act of April 2d, 1866 (Stats. 1865–6, p. 786) provides that "an *ad valorem* tax of one dollar and five cents upon each one hundred dollars value of taxable property, which tax shall include the taxes provided by law to be levied for the payment of the funded debts of this State and the interest thereon, is hereby levied, and directed to be collected and paid for State purposes, upon the assessed value of all property in this State, not by law specially exempted from taxation." The intention to make a present and direct levy of the tax, to take effect upon the making of the valuation, is beyond question.

There were other statutes passed, at the same session, of similar import in this respect, the language being, the tax "is hereby levied." The general Acts of 1857 and 1861 contain similar provisions. Why it was provided by the amendment of 1866 to the Consolidation Act above cited that the Board of Supervisors should re-levy the State tax is beyond comprehension. In that respect it was doubtless a copy of earlier Acts containing the same vicious and senseless provision. It certainly was not the intention that the re-levy by the Board of Supervisors should be a condition precedent to the taking effect of the general Act, or that the authority to collect the revenue for State purposes should be dependent upon the care, accuracy or diligence of the Board of Supervisors, or even their ability to ascertain from the statutes, the several items of tax for State purposes.

In the Act of March 26th, 1866, amendatory of the Consolidation Act, and immediately following the provision above quoted, requiring the Board of Supervisors to levy the amount of taxes for State, city and county purposes, is this provision : " Said amount to be such as the said Board may deem sufficient to provide for the payment of all demands upon the treasury thereof, authorized by law to be paid out of the same." This language, construed by the recognized rules of statutory construction, lends support to the position, that the levy of the taxes for State purposes was dependent upon the action of the Board ; but that construction must be rejected, and " said amount" must be held to relate to the taxes for city and county purposes only, unless we are prepared to assent to the ridiculous proposition that the Legislature intended to delegate to the Board the sovereign power of determining the amount of the State tax. The inconvenience and the evils of the provision requiring the Board of Supervisors to re-levy the State tax has, on two occasions, been attempted to be remedied. The Act of May 15th, 1862, (Stats. 1862, p. 560,) and the Act of March 2d, 1864, (Stats. 1863–4, p. 134,) provide, in substance, that the Auditor shall enter upon the assessment roll

the amount of the *ad valorem* tax upon each parcel of property assessed. The direction to the Board to levy the tax already levied by the statute is as senseless and absurd as would be a direction in an execution that the Sheriff adjudge that the plaintiff is entitled to recover the amount of the judgment.

It is unnecessary here to determine whether the amount of the taxes for State purposes mentioned in the order is correct. The items amount to one dollar and ten cents on each one hundred dollars, exclusive of the item for Insane Asylum purposes. The Act of April 2d, 1866, levies a tax of one dollar and five cents, but does not specify the items of which it is composed, except that it " shall include the taxes provided by law to be levied for the payment of the funded debts of this State and the interest thereon." It does not declare whether that amount shall be in addition to or inclusive of taxes expressly levied by law, such as taxes for the support of common schools, for the construction of the State Capitol, for the interest and redemption of soldiers' bounty bonds, and other purposes specially designated in previous Acts. If it was intended to be inclusive of the latter, then the amount mentioned in the Act—one dollar and five cents—is incorrect, if the items mentioned in the order of the Board are correct; and as counsel have not objected to the order on the ground that the items are incorrect, it may fairly be presumed that they have verified them by the several statutes levying the respective taxes. But there is nothing in the language of the Act indicating that the sum of one dollar and five cents is *inclusive* of the other taxes we have alluded to. If such was, in truth, the intention of the Legislature, though not expressed in the Act, that fact, as well as the error in the computation, suggests the propriety of a further curative Act.

Whether the Act was intended as an aggregation of all the State taxes or not, it does not operate as a repeal of the Acts levying those several taxes, and therefore there were certain

taxes for State purposes with which the property of the
defendant was charged. We do not undertake to specify
them, as it is unnecessary at this stage of the case, and time
will not permit the requisite examination of the statutes for
that purpose. While this matter is before us, it might not
be amiss to observe that the Act of 1866, levying a tax of
one dollar and five cents on each one hundred dollars value
of taxable property, does not provide that such tax shall be
levied *annually*. If it was designed that the Act should also
operate as a levy of taxes for the succeeding fiscal year, the
omission is manifest; but as the point does not arise in this
case, we will not undertake to say that a curative Act could
reach the defect.

The taxes for city and county purposes, so far as they
depended upon the order of the Board of Supervisors in
making the levy, were invalid because the order was not
made within the time required by the statute.

Objection is taken to the action of the Board of Equaliza-
tion. Section two of the Act of 1862 (page 509) provides
that the Board " shall meet on the first Monday in June in
each year for the correction of errors in the assessment of
personal property, and shall continue in session from time
to time until all such errors brought to their notice shall be
corrected; provided, however, they shall not sit after the
third Monday in June." The Board met on the first and
the third Mondays of June. Between those days, as we
infer from the record, a committee of the Board received
applications for the correction of the assessment, and perhaps
took the testimony, if any was offered. We see no objection
to such a course, calculated as it was to facilitate the dispatch
of business. The Board, as was necessary and proper,
finally acted on the applications and ordered the corrections
to be made on the assessment roll. The Act does not
require the Board to remain in session during the whole
period of its existence. The failure to sit on any day, or
any number of days, less than the whole, is productive of no
injury to a person who is assessed, unless he has cause to

complain of the assessment, and unless it also appears that he failed to have the errors corrected because he could not get a hearing before the Board.

The valuation, as we have remarked, is to be made by the Assessor, and the province of the Board is to correct errors by adding to or deducting from the valuation, when application therefor is made. It does not appear that, when the Board closed its session, any valuation was erroneous. The objection, in our opinion, is untenable.

The counsel for the plaintiff suggests that " this case presents a fit opportunity " for the Court " incidentally to direct the attention of the next Legislature to the necessity of reducing the jargon of the various laws into one legible and intelligible statute on the subject of revenue." The learned counsel are, doubtless, laboring under the delusion that the revenue laws should be general and uniform in their operation. But a cursory glance at the legislation upon this subject will disclose their error. It has been found necessary to devise almost as many different revenue systems as there are counties in the State, and frequently they will suffice for only one year. It has been found necessary to provide different times and modes for the performance of official services under the revenue laws; and in one instance the necessities of the occasion were such that the Board of Equalization of one county was required to commence its session *after* the time when the Auditor is required to deliver the duplicate assessment roll to the Tax Collector. We must decline to accede to the request. After having given the Revenue Acts a thorough investigation no one will need any suggestions from us urging their revision.

The defendant's counsel present two questions of great moment. They relate to double taxation, and the constitutionality of the Revenue Laws. It is apparent that the question, whether the assessment against the defendant, of the sum of money loaned, under the existing circumstances, amounts to double taxation, does not legitimately arise upon the facts of the case. While the defendant held the money,

which he afterwards loaned to Lick, he was taxable for that sum, and when he passed the money to Lick upon making the loan, and took Lick's obligation to pay the same, secured by a deed of trust or other adequate security, he certainly did not divest himself of so much property. He possessed the same amount of property that he held before the loan was made. Its form only was changed. And so in all cases of loans. The lender owns the debt, and the debt is property, its value depending on the sufficiency of the security, if there be security, and the ability of the borrower to pay the debt. The holder of the debt is taxable upon the value of the debt. If the property of the borrower is assessed at its full value without any deduction for what he owes, whether its payment is secured by any lien or charge upon his property or not, perhaps he may complain of undue or double taxation ; and it seems that there is no difference, in this respect, whether the lender holds only the promise of the borrower, which may be enforced against his property by proper legal proceedings, or has a lien upon his real or personal property by judgment or the levy of an execution, or whether he has a specific lien by virtue of a mortgage, pledge, deed of trust, etc. But it is useless for us to express an opinion upon these questions so far as they relate to the borrower, for it would be a mere *obiter dictum*. The lender has no legal cause to complain that the borrower suffers the wrong of double taxation or of being taxed for more than the value of his property after deducting the liens, charges or incumbrances thereon. A decision in this case of questions of that character would not have the force of authority.

Another question, and one of much greater importance under our present revenue system, does arise in this case. The defendant objects to the tax on the ground " that the Legislature having, in defiance of constitutional requirements, imposed the burden of taxation upon a portion only of the property in the State, and expressly relieved a large portion from taxation, the law is neither equal nor uniform

in its operation, does not tax ' all the property in the State,' and is therefore void."

The section of the Constitution referred to is section thirteen of Article Eleven, and is as follows : " Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law ; but Assessors and Collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property taxed for State, county or town purposes is situated." The first clause of the section was considered by this Court in *The People* v. *Naglee,* 1 Cal. 252, which was an action instituted to test the constitutionality of the law of this State, requiring foreigners to pay a license fee for the privilege of working the gold mines upon the public lands in this State. It was there held that this clause, when taken in connection with the clause following it, must be construed as limited to direct taxes upon property ; and it was considered that the statute in question was unaffected by that clause of the Constitution—for the statute did not levy or assess a tax upon property, but required a certain license fee to be paid by those of the specified class, who should pursue the designated business.

The same question was presented in *People* v. *Coleman,* 4 Cal. 46. Two actions were brought, the one to recover the penalties imposed by the Revenue Act of 1853 on auctioneers for selling property without license, and the other to recover penalties imposed by the same Act on persons selling goods consigned for sale from without the State ; and both cases were considered together. The authority of the *People* v. *Naglee* was recognized, and it was held, that the first clause of the section applied to taxes upon property, and not upon trades, professions or occupations, such taxes being in the nature of license taxes. This may be accepted as the correct construction of that clause ; or rather, without expressing any opinion as to its applicability to taxes imposed upon persons, whether as poll taxes or license taxes, we accept as correct

the construction, that the clause does apply to taxes upon property.

The Court, after disposing of the first clause of the section, proceeded to construe the second, and the conclusion reached was that the clause did not limit or resrict the power of the Legislature so as to prevent it from exempting from taxation such property as in its discretion it might think proper.

This point was directly presented in *High* v. *Shoemaker*, 22 Cal. 363, and it was held "that the omission to tax a portion of the land in the State does not render the Revenue Act of 1857 void." The decision was based upon the authority of *The People* v. *Coleman* and the reasoning in that case, without entering anew upon an analysis or construction of the section. There are no other cases in this Court bearing directly upon this question; and as the latter case, *High* v. *Shoemaker*, rests entirely upon the case of *People* v. *Coleman*, and the reasons upon which it is placed, we will proceed to the examination of that case, and will give our construction of that section of the Constitution.

In each of the cases considered on that appeal the question related only to a tax upon business—a tax in the nature of a license tax—and it was so considered by the Court in delivering their opinion. In the case of the sale of consigned goods there were some features that resembled a tax upon property, but the Court treated it as a tax upon the business of the consignee. The first clause of the section, " Taxation shall be equal and uniform throughout the State," was necessarily involved in the discussion, and if that clause should be considered applicable to taxes of that character, the Court would be bound to declare the Act void so far as it levied those taxes. But, as already stated, it was held that the clause applied to taxes upon property only, and consequently it had no application to taxes upon persons, trades, professions and business.

The question as to the construction of the section in its application to taxes upon property—as to whether it limited

57

or in any manner restricted the power of the Legislature—was not involved in the case in any manner whatsoever, and all that was said upon that point must, in our opinion, be regarded as *obiter dicta.* We have this point established by these cases ( *The People* v. *Naglee*, and *The People* v. *Coleman*), that the clause—" Taxation shall be equal and uniform throughout the State "—applies to taxes upon property; and it may be added that we have never heard this proposition doubted by any one.

At the time of the adoption of the Constitution of this State no provision identical with that of the section before us was to be found in the Constitution of any other State.

The Constitution of Missouri provides " that all property subject to taxation in this State shall be taxed in proportion to its value." In construing the language of this section, the question at once presents itself as to the word " subject," whether the property to be taxed was all the property within the State, over which the Government of the State had jurisdiction, or only such property as the Legislature might in its discretion subject to taxation.

These questions were very elaborately discussed in *Crow et al* v. *The State of Missouri*, 14 Mo. 237, and a majority of the Court were of the opinion that the first was the meaning of the term. This matter is alluded to here merely to say, that in the section of our Constitution, there is no such word of doubtful import.

The section relating to taxation in our Constitution was taken, with certain important modifications, from that of Texas. The twenty-seventh section of Article VII of Texas is as follows : " Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law, except such property as two thirds of both Houses of the Legislature may think proper to exempt from taxation. The Legislature shall have power to levy an income tax and to tax all persons pursuing any occupation, trade or profession ; provided, that the term ' occupation ' shall not be construed

to apply to pursuits either agricultural or mechanical." That section was framed in full view of the principle that the power of the Legislature over the subject of taxation of property is plenary, except as restricted by constitutional limitations. That portion of the section which corresponds with the first portion of the section in our Constitution was not, therefore, intended as a grant of power to the Legislature; nor was it intended as an affirmance of a power recognized and admitted on all hands as possessed by the Legislature. The language is not expressive of such an idea. It must have been intended as a limitation of power. This becomes manifest, and, we think, indisputable, when that portion of the section is read with the following clause: "Except such property as two thirds of both Houses of the Legislature may think proper to exempt from taxation." This clause was inserted for some purpose. It cannot be said that it was added without any object, without design, and merely to round a period. It must have been added because the framers of the instrument understood that without it the previous portion of the section required a property tax to be levied upon all property without exception, and that the clause was necessary in order to enable the Legislature to exempt any description of property from the operation of the general rule of taxation. By a slight change among the members of the sentence, but still retaining the same sense, it will read: "All property in this State, except such property as two thirds of both Houses of the Legislature may think proper to exempt from taxation, shall be taxed in proportion to its value, to be ascertained as directed by law." Read in that manner, it is evident that the section is a limitation upon the power of the Legislature to exempt from taxation any kind or parcel of property, unless exempted in the mode therein described, and that the clause was inserted as a relaxation of the general and imperative rule embodied in the previous words of the section.

Accepting as a fact that our Constitutional Convention borrowed the first portion of the section relating to taxation from

the Constitution of Texas, and seeing that the clause in that Constitution permitting the Legislature to exempt property from taxation, is omitted from our Constitution, the conclusion is inevitable that it was not intended that the Legislature should possess the power to exempt property from taxation, if the previous clauses of that Constitution did, in fact, limit the power of the Legisltature in that respect. Suppose, for the purpose of illustration, that the Legislature, in framing the charter of a city, should grant the power of taxation over all property within the municipality, and should insert a section similar to that which we cited from the Constitution of Texas, and should afterwards amend the section making it similar to that of our Constitution, no one would doubt that the power of exempting property from taxation was conferred upon the municipal government by the original charter, and was denied to it by the amended charter.

In the *People* v. *Coleman* the Court, upon reference to the debates of the Constitutional Convention, were of opinion that the clause was adopted " as a pledge of security to the native inhabitants against imaginary cases of inequality or arbitrary exactions," and was intended to apply only to lands. The remarks of the members of a Convention are not as sure an index of the intention of the Convention as the words of the instrument they may frame. While the words of the section, as first proposed—" All lands liable to taxation in this State," etc.—would indicate the intention to limit the power of the Legislature, where lands were the subject of taxation, the words of the section, as finally adopted—" all property "—as clearly indicate the intention to limit the exercise of the taxing power, when applied to property of any description; that is to say: if the section, as first reported, limited the land tax to an *ad valorem* tax upon all lands, the section, as adopted, limited a property tax to an *ad valorem* tax on all property. And, even if the provision was intended to apply to lands only, and was inserted to quiet the fears of the native Californians, who owned large tracts of land, and were apprehensive that their lands would

be made to bear an undue portion of the burden of support-
ing the State Government then about to be organized, if
the power of exemption now contended for still remained
with the Legislature, notwithstanding that section, then the
pretense that the section would afford them protection was
illusory and deceptive; for the Legislature would have the
power, by exempting from taxation all other property, to
cast the whole burden upon lands.

Every one is aware that the debates of a Constitutional
Convention or a legislative body furnish but an uncertain
and often unreliable guide in the interpretation of Constitu-
tions and laws.    It frequently happens that no one expresses
the views of those by whose votes a measure of importance
is passed.    Those who sustain the measure may be satisfied
with voting without discussion, and, if one or more of them
do join in the debate, it does not follow that their intention
or their interpretation of the measure is that of the majority.

In this case, while it appears that some of the members
understood that provision was being made in respect to
lands, there were others who regarded the section as extend-
ing to all property.    Tefft said : " Taxation in this country
must be burdensome, and what I wish to urge particularly
is that we should provide that the burden may rest as nearly
equally upon the shoulders of all as possible.    And knowing
this fact, viz : that from the necessities of the case taxation
must be burdensome for some years to come, I feel deeply
interested in the adoption of this Article, confining the
power of the Legislature to certain judicious limits, and
compelling them to resort to measures that will insure an
equality of taxation." (Debates in Convention, p. 367.)
Botts said (Id., p. 372) : " I hold nothing to be more true
than that government is instituted for the preservation of
life, liberty and property, and that he who holds property
ought to pay for the protection of that property in propor-
tion to the amount that is protected ; and that I say without
any regard to the kind of property, because all men have an
equal right to acquire any kind of property they please."

The Court, in *The People* v. *Coleman,* very truly say that if the position contended for is maintainable the Legislature would have no power to exempt from taxation the property of religious and eleemosynary corporations, nor by the same means to protect her own domestic interests, her agriculture, manufactures, mechanical employments, etc., or to relieve a " meritorious class of citizens " of the burdens of taxation. These matters go to the policy of the section, but do not aid in its interpretation.

The Court say : " We cannot presume that a high, co-ordinate branch of the Government will ever be actuated by any other motive than a liberal, honest and enlightened regard for the interest and welfare of the State." If this is a legitimate argument in favor of the construction adopted by the Court in that case, it may be asked why the presumption is any more conclusive when the subject matter of legislation is taxation than when it is the creation of corporations, the division of the State in Congressional districts, the granting of a charter for banking purposes, or other matter, in respect to which the exercise of legislative power is limited or forbidden by the Constitution ? Whether the limitation of power in any particular respect was wise and judicious we do not undertake to declare, but it must not be forgotten that the Constitution is a limitation—not a grant— of power.

There are few, we apprehend, who, after an examination of the legislative history of this State, would not favor a greater number and more clearly defined limitations than the Constitution now affords.

Taxes are charges imposed by or under ·the authority of the Legislature, upon persons or property subject to its jurisdiction. The power of taxation is a necessary incident to sovereignty, and under our system of government it pertains to the legislative department, for the levying of a tax is necessarily a legislative act. The tax must have its origin in a law, enacted for that purpose. As the power of the Legislature over the whole subject of taxation, including the

property to be charged, the amount of the tax, the mode of levying, assessing and collecting it, etc., is as ample as over any other matter that is the proper subject of legislative action, the Constitution must be examined, as before remarked, to ascertain what limitations, if any, are imposed upon its exercise.   What is the import of the words : " Taxation shall be equal and uniform throughout the State ?" When the Legislature has established a rate of taxation for general State purposes, or to pay the funded debt, or for any or all of the purposes for which revenue is required, and, under the law, lands of one person, or situated in one county, are taxed at the same rate upon their assessed value as the lands of another person or those situated in another county, then it may be said that the taxation is equal so far as lands are concerned.   But it may be safely said that no member of the Convention or elector who voted upon the question of the adoption of the Constitution ever heard of an instance in the United States where an *ad valorem* tax was levied, and the same species of property, owned by different persons or being in different counties, was charged with different rates of taxation ; and it would not be reasonable to suppose that the Convention were providing against such an improbable violation of the rules of common honesty.   But suppose A. owns land and B. owns a stock of goods, and an *ad valorem* tax is levied upon the land only—or suppose both A. and B. own lands or other property, but are pursuing different avocations, and the tax is levied upon lands only or upon the property of those pursuing A.'s avocation, can it be said, in either case, that the taxation is equal ?   The inequality is so apparent that argument cannot make it more manifest.

But if it is still contended that taxation is equal, when the same species of property, wherever it may be, is charged with the same *ad valorem* tax, the next clause of the section, " All property in this State shall be taxed in proportion to its value," is a complete answer to the position.   Construction or interpretation can scarcely make the meaning of the words more apparent, for there is no word in the clause of

ambiguous or doubtful import. The meaning of taxation must be kept in view, and that is : a charge levied by the sovereign power upon the property of its subject. It is not a charge upon its own property, nor upon property over which it has no dominion. This excludes the property of the State, whether lands, revenues or other property, and the property of the United States. That " all property in this State " does not mean either all that the Legislature may designate, or all except such as the Legislature may exempt, is as self evident as the axiom that the " whole is greater than a part." No process of reasoning or demonstration can make it plainer. Had the Convention intended that the property liable to taxation should be all property except such as the Legislature might exempt, the section of the Constitution of Texas, from which ours was taken, was before them, containing the provision adapted to that purpose, and the omission to copy that also, would be unaccountable.

Apply the opposite construction to other sections of the Constitution, expressed in no more comprehensive terms, and the absurdity is apparent.

The next section provides that " all property, both real and personal, of the wife, owned or obtained by her before marriage, and afterwards acquired by gift, devise or descent, shall be her separate property." Add to this the clause, " except such property as the Legislature may provide shall vest in the husband," and the section is worthless for protection to the wife. Take the sections of the Declaration of Rights : " All men are by nature free and independent," etc. ; " All political power is inherent in the people," etc. ; " All persons shall be bailable by sufficient sureties," etc ; and add the clause which, it is contended, is implied in the section relating to taxation, and the Declaration of Rights becomes a sham.

Provision is made in the section that taxes upon property shall be levied *ad valorem*, that the valuation of the property shall be made in a mode to be prescribed by law, and by

Assessors to be elected by the qualified electors of the proper district, county or town. What do the preceding words of the section mean? What was the purpose of their insertion in connection with the provisions just alluded to? We can conceive of no other purpose than to secure that equality of taxation which results from subjecting *all* property to the same burden—to give effect to that maxim which accords so perfectly with justice and right—*qui sentit commodum debet sentire onus.*

It is provided by the second section of the General Revenue Act of 1857, as amended in 1859, (Stats. 1859, p. 343,) that "all property of every kind and nature whatever within this State shall be subject to taxation, except" certain property therein specified. After mentioning the property of the State, the counties and municipal corporations, and of the United States, the section enumerates colleges, school houses and other buildings for the purpose of education, public hospitals, asylums, poor houses and other charitable institutions for the relief of the indigent and afflicted, churches, chapels and other buildings for religious worship, together with lots of ground and other property appurtenant thereto; cemeteries and graveyards; the property of widows and orphan children to the amount of one thousand dollars; growing crops and mining claims.

If the power exists in the Legislature to exempt growing crops, mining claims and other property mentioned, the exemption may be carried still further, until property of one class is made to bear the whole burden of taxation. The exemption, so far as it includes private property, is in plain violation of the command of the Constitution.

Does the attempted exemption of certain species of property from taxation render the whole Revenue Act void? We are of the opinion that such result does not ensue. The exemption being void, it must be stricken from the Act, and the Act must be read as if that provision had not been inserted. The Act of April 2d, 1866, when the illegal pro-

58

vision is expurgated, prescribes that an *ad valorem* tax of one dollar and five cents, etc., "is hereby levied and directed to be collected and paid for State purposes upon the assessed value of all property in this State." It is therefore the duty of the Assessors, under the Act, to assess all property in their respective districts, counties, etc., subject to taxation. This comprehends all property except that which may be denominated, generally, public property. The omission of the Assessor to assess a parcel of property, under a misapprehension of the law, will not invalidate the assessment list. In that respect it has no greater effect than the casual omission of a parcel of property through a mistake of fact.

It is scarcely necessary to say, that with the policy of the provision of the Constitution we have been considering, or of the several Acts of the Legislature attempting to create certain exemptions from taxation, we have nothing to do; or to add that our inclination accords with our duty in attempting to uphold the Acts of the Legislature if they are not clearly in conflict with the Constitution. For the learned Justices who united in the decisions in the *People* v. *Coleman* and *High* v. *Shoemaker*, we have great respect; and we would readily and willingly yield to the authority of their decisions, in cases where the construction of a constitutional provision is involved in doubt. But when the language of the Constitution is, as we find it in this section, clear and free from ambiguity or doubt, we must yield to the Constitution as the paramount authority.

Judgment reversed and the cause remanded for a new trial.

[Note.—The foregoing opinion was rendered at the October Term, 1867.]

By the Court, CROCKETT, J., on petition for rehearing :

Inasmuch as two members of the Court were not on the bench when this cause was decided, we have deemed it proper, on the petition for rehearing, to review carefully the propositions announced in the original opinion.

We shall not attempt to go into a fresh analysis of the various and complicated provisions of the Revenue Laws involved in the case. This duty was laboriously and carefully performed in our former opinion; and we have nothing to add to or subtract from the conclusions announced on that branch of the case.

But to avoid any possible misapprehension in respect to our position on the more important propositions involved in the case, we propose to amplify somewhat the views heretofore expressed.

Counsel have urged with much earnestness that this presents a case of double taxation. The argument is, that the owner of the mortgaged premises is taxed for the full value of the property without any abatement for the mortgage debt, whilst the holder of the mortgage is also taxed for the full amount of the debt.

In other words, it is insisted that if the owner of the mortgaged property is assessed for its full value, the debt secured by the mortgage, which is a lien on the property, and to that extent represents the same value, cannot be taxed without creating a case of double taxation. But if that be the result, it is obvious it is only the mortgagor who can complain. It is his property, if any, which is doubly taxed and not that of the mortgagee. The question does not arise in this case whether or not mortgaged property can be assessed at its full value without abating from such value the amount of the mortgage. If we were to attempt to decide that question in this cause we should travel out of the record and decide upon a proposition which is not before us.

The point before us is whether or not a tax on the debt

secured by the mortgage is in any sense double taxation as against the mortgagee. Can he complain that he is twice taxed on the same value? It is quite obvious that such is not the fact; and it is equally plain that a debt secured by a mortgage is the subject of taxation. The statute specifies, amongst other property to be taxed, " all money at interest or loaned, whether secured by pledge, mortgage or otherwise," and " all solvent debts, exceeding what may be due from such person, corporation, association or firm."

A solvent debt, therefore, in excess of debts due from the taxpayer, and whether secured by mortgage or not, is within the express letter of the statute; and the tax upon such debt is not double taxation as against the holder of the debt.

But the more important proposition involved in this cause is that arising under section thirteen of Article Eleven of the Constitution, which provides that " taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law; but Assessors and Collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property taxed for State, county or town purposes is situated." The Revenue Act exempts certain classes of private property from taxation; and it is insisted that under the foregoing clause of the Constitution there can be no such exemption. In the original opinion in this cause we discussed this question fully and arrived at the conclusion that the Legislature has no constitutional power to exempt from taxation any class of private property whatsoever. We have seen no cause to change our views on this subject; but inasmuch as the question is of grave importance, we have carefully reconsidered the propositions heretofore announced, and deem it proper to state a few additional reasons in support of our conclusions.

We assume it is an axiom that, in all just systems of government, the burdens of taxation should be distributed as equally as practicable; and though political economists

have differed widely as to the most effective methods of attaining this equality, it is now conceded on all sides that it should be the aim of all enlightened Governments to approximate as nearly as possible to a system of perfect equality in the imposition of taxes.    We are authorized to assume that the Convention which framed our Constitution had in view this cardinal principle in political economy when it ordained, as a part of the organic law, that " taxation shall be equal and uniform throughout the State.   All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law."

In construing this clause, no one can doubt that the general object which it was designed to accomplish was equality and uniformity in taxation.   But there has been considerable diversity of opinion as to the nature and extent of the equality and uniformity intended to be established.   In *The People* v. *Coleman*, 4 Cal. 46, the Court held that the Legislature is not prohibited from discriminating between different classes of property or citizens; nor from exempting entirely from taxation such classes of either as it may see fit, unless it appear that the Legislature imposed a tax " designedly operating unequally;" or unless " a want of uniformity in its operations was apparent upon its face," in which event, it admits, it would be the duty of the Court to pronounce the Act unconstitutional.

With all due respect for our predecessors, we cannot subscribe to this reasoning.   We are unable to perceive that it is at all material whether the Act " designedly " operates unequally, or whether its want of uniformity in its operation is apparent on its face.

If a tax be grossly unequal or practically devoid of uniformity in its operation, it is wholly immaterial whether it is the result of design, accident or inadvertence.   Its validity cannot depend upon the motive which prompted it, nor upon the circumstances attending its enactment.   If it be obviously an unequal tax and not uniform in its operation, it

violates the Constitution, whatever may have been its
origin.

Nor can we subscribe to the proposition that the Legisla-
ture, at its discretion, may discriminate between different
classes of property or citizens in the imposition of taxes.
If it can tax one class of property or citizens at a particular
rate and another class at a different rate, or omit to tax one
or more classes at all, there is no limit whatever to its dis-
cretion in these respects. It may impose the whole burden
of taxation upon a particular class, to the exclusion of all
other classes. It may collect the whole revenue of the State
from merchandise alone, or from a particular class of mer-
chandise. It may tax lands or mines and except the capital
of banks, trade corporations, and all dealers in money or
merchandise. In short, it may establish a system of taxation
which would be utterly ruinous to a certain class or classes
of citizens, whilst other more favored classes would be par-
tially or wholly exempt.

It is no answer to this argument to say that if the Legis-
lature should so grossly abuse its trust, the remedy is to be
found at the ballot box. The same answer would apply
with like effect to any other violation of the Constitution by
the Legislature. · The functions of the Courts in respect to
unconstitutional legislation are useless if the ballot box is to
be appealed to as the only remedy.

Nor are we without some practical illustrations of the value
of this constitutional provision. Heretofore the mining
interests have predominated in the legislation of this State,
and mining claims have consequently hitherto escaped taxa-
tion. But it may be that at some early period the agricul-
tural and commercial interests will exert a controlling influ-
ence in our legislation; in which event, except for this wise
constitutional limitation, the burdens of taxation might be
chiefly imposed on the mining interests, to the exoneration
of other property justly liable for its share of the taxes.
The subjects of taxation would be thus continually shifting
as the one or the other interest might predominate in politi-

cal influence, thereby leading to retaliatory legislation on the part of the dominant class against the other.

These considerations doubtless influenced the Convention in framing the Constitution to omit from that instrument the provision contained in the Constitution of Texas, whereby the Legislature is empowered, at its discretion, to exempt from taxation such property as it shall see proper. And it was precisely such possible abuses as those above mentioned that our Constitution was intended to prohibit.

The language of the section we have quoted is so explicit as to leave but little room for doubt as to its correct interpretation; but, if any doubt remained, it is readily solved by reference to the peculiar circumstances under which that section was adopted. The omission to confer upon our Legislature the discretion specially delegated to the Legislature of Texas in respect to the exemption of property from taxation must, under all the circumstances, be presumed to have been intentional, and is equivalent to an express constitutional prohibition to the exercise of the powers thus designedly withheld.

We adhere, therefore, to the proposition hererofore announced, that, under the Constitution, the Legislature has no power to exempt from taxation any private property whatsoever.

If any practical inconvenience shall result from our construction of the clause in question, the remedy will be found in an amendment of the instrument itself. It is our province to expound it as we find it, and not to supply its omissions, if any there be, by forced interpretations.

Rehearing denied.