[No. 4,170.]

# THE PEOPLE EX REL. J. T. DOYLE AND W. C. RAL-STON v. ALEXANDER AUSTIN, TAX COLLECTOR OF THE CITY AND COUNTY OF SAN FRANCISCO.

"TAX" AND "ASSESSMENT."—The fact that a statute designates as a "tax" that which in its elements is an "assessment," does not make it a "tax." The question whether it is a "tax" or "assessment" must be decided by the nature of the imposition.

WHAT IS AN ASSESSMENT.—If a street is opened in a city, and to pay for the land taken, and the damages to improvements thereon or adjacent thereto, and injured thereby, and all other expenses, bonds are issued; and to pay the same and the interest thereon, an annual per-centage is directed to be levied on the lots benefited thereby, which per-centage is upon the enhanced value of the lots, as fixed by a board of public works, this imposition is an assessment and not a tax.

IDEM.—In such case the interest to accrue on the bonds, and the discount suffered in converting them into cash, are incidental expenses, and the property benefited is only charged with the cost of the improvement.

STATUTE IMPOSING AN ASSESSMENT.—When a statute for opening a street in a city provides that, to pay the damages and expenses incurred thereby, an assessment shall be levied on the lots benefited "according to the enhanced value of the respective parcels of lands as fixed" in a report of a Board of Public Works, the assessment must be limited to the increased value of each lot caused by the improvement, and must not include the value of the lot without the improvement.

EXEMPTION OF PUBLIC PROPERTY FROM ASSESSMENT.—When, to pay the expenses of opening a street in a city, an assessment is imposed on the lots to be benefited thereby, in proportion to the benefits accruing to

CAL. REPS. XLVII—2C.

each, the exemption from the assessment, of lots belonging to the
United States, to this State, and to the city, does not render the-statute
void, or the assessment illegal.

TAX ON PUBLIC PROPERTY.—The property of the United States, or of this
State, or of a municipal corporation, is not subject to taxation for rev-
enue purposes.

APPEAL from the District Court, Nineteenth-Judicial
District, City and County of San Francisco.

By the Act of 1871-2, referred to in the opinion, a belt
of land extending from Montgomery street near Washing-
ington street, northerly, was taken and dedicated for a pub-
lic street, to be known as "Montgomery Avenue." This
belt of land is eighty feet wide, and is in the thickly settled
part of the city of San Francisco. The Act provided that
the value of the land taken for the avenue, and the damages
to the improvements thereon, or adjacent thereto, injured
thereby, and all other expenses, whatsoever, incidental to
the taking and opening of said avenue, should be held and
considered to be the cost of opening the avenue, and should
be assessed on the lands mentioned and described in the
Act, in proportion to the benefits accruing therefrom to the
several lots, subdivisions and pieces of land respectively,
which were by the Act declared to be benefited by opening
the avenue. The Act then described particularly by metes
and bounds the district which should be deemed benefited
by the improvement, and within which the lots and pieces
of land should be assessed, but there was a proviso exempt-
ing from assessment all lands belonging to the United
States or the State of California. A Board of Public
Works was created by the Act, consisting of the Mayor, the
Tax Collector, and the City and County Surveyor, whose
duty it was, among other things, to ascertain the value of
the several lots, and the damages to be sustained and the
increased value of the several lots caused by the improve-
ment. To pay the expenses, bonds were to be issued in
sums of not less than one thousand dollars each, payable in
thirty years, bearing interest at six per cent. per annum, to
be designated as "Montgomery Avenue Bonds." To pay
the interest on said bonds, there was to be "levied, assessed

and collected annually, at the same time and in the same manner as other taxes are levied, assessed and collected in said city and county, a tax upon the lands" described in the Act. After the year 1880, to pay the principal of the bonds, an annual tax of one per cent. on each $100, of valuation, was to be levied on the same property. The Act declared that these assessments "shall be adjusted and dis-·tributed according to the enhanced values of the respective parcels of land, as fixed in the said final report by the said Board."

This was an application for a writ of prohibition.

Under the act, the Board of Public Works proceeded to estimate the cost of opening the avenue, ·and ascertained that it would be $1,244,736.26, and that the property adjacent would be enhanced in value in the sum of $6,816,-261.84. Of this latter amount, however, it was found that $800,000 would accrue to property belonging to the United States, to the State of California, and to the city and county of San Francisco; and, accordingly, that amount was deducted from the total estimated enhancement of values. The report was confirmed by the County Court, and subsequently, to meet the cost of the enterprise, bonds of the denomination of $1,000 each, bearing interest at the rate of six per cent. per annum, and running thirty years, were prepared to the amount of $1,500,000. At the commencement of this proceeding, in December, 1873, bonds to the amount of $979,000 had been issued. A portion of them had been sold in the market at par, but most of them were sold at a discount, bringing from eighty to eighty-seven and a half cents on the dollar. In October, 1873, the Board of Public Works made a calculation of the sum of money required to pay the interest on the bonds, estimating that, on the first day of January, 1874, bonds would be issued to the amount of $1,000,000, which would require $30,000 to pay the interest then to become due; and that, by July, 1874, the whole amount would be issued, requiring $45,000 more for interest, making in all $75,000. To raise that sum, they fixed upon a rate of assessment of $1.25 on the $100, to be levied upon the $6,016,261.84, estimated and enhanced val-

ues over and above the-$800,000-of benefits estimated to ac-crue to public property.    Their action was reported to the Board of Supervisors, and thereupon an ordinance was passed levying the assessment accordingly.    The assessed value of the property in the district concerned, irrespective of the estimated increase in values, was $16,000,000.

The petitioners, J. T. Doyle and W. C. Ralston, were joint tenants of a parcel of land valued at $5,250, which was taken for the avenue, and also of another parcel not taken, and which it was estimated would be enhanced in value to the amount of $12,000.    They applied for a writ to prohibit the collection of the assessment, which they claimed to be a tax.    An alternative writ was granted.    The respondent answered.    And after hearing of the cause, the Court dis-missed the alternative writ, whereupon the petitioners ap-pealed.

*Scripture & Bugbee,* and *Doyle & Barber,* for the Appel-lants, argued that the tax was void because not distributed on the actual value of the property as ascertained by an assessor, and because not based on an assessment made by an assessor elected by the voters of the district taxed, and cited *Reilly* v. *Lancaster,* 39 Cal. 358; *Williams* v. *Corcoran,* 46 Cal. 553; *People* v. *Hastings,* 29 Cal. 449. They also argued that it was a "tax" and not an "assessment," that an assess-ment was the distribution amongst property, beneficially af-fected by a local improvement, of the cost of such improvement according to the benefits received and could not exceed the cost of the improvement.    That here the amount of bonds issued would depend on the price at which they were sold, and were not limited to the cost of the improvement.    That the tax was also illegal, because the law required it to be distributed according to the enhanced values of the re-spective lots, and it was levied on merely the enhancement of value caused by the improvement.    That the "enhanced value" was the value of a lot after being enhanced.

*M. A. Wheaton,* also for Appellant, argued that an assess-ment should be a gross sum levied at once to pay for a local improvement, and that it could not be levied by a per-centage

annually for thirty years, and cited *Taylor* v. *Palmer*, 31 Cal.
240, and *The People* v. *Mayor of Brooklyn*, 4 Comstock, 419.
He also argued that the tax was not an apportionment upon
each lot of its share of the cost of a local improvement,
but a per-centage upon a valuation to be imposed each year
in the manner of other taxes, and therefore could not be
called an assessment.

*W. C. Burnett*, City and County Attorney, and *Estee &
McLaurin*, for Respondent, argued that it was an assess-
ment, because it was a local burden imposed to pay the
cost of an improvement imposed on property benefited
thereby with reference to the benefit the property was sup-
posed to receive, and cited *Taylor* v. *Palmer*, 31 Cal. 254,
and *Emery* v. *San Francisco Gas Co.*, 28 Cal. 356, and *Sin-
ton* v. *Ashbury*, 41 Cal. 525.    That being an assessment for
local benefit, it did not come within the clause in the Con-
stitution requiring taxation to be equal and uniform, and
cited *People* v. *Naglee*, 1 Cal. 252; *People* v. *Coleman*, 4 Cal.
46; *Burnett* v. *Mayor et al.* 12 Cal. 76; *People* v. *Mayor of
Brooklyn*, 4 Comstock, 419, and *Howell* v. *The City of
Buffalo*, 37 N. Y. 267.

By the Court, CROCKETT, J.:

The Act of April 1, 1872 (Stat. 1871–2, p. 911), which
provides for the opening of "Montgomery Avenue," in the
city of San Francisco, is assailed on the ground that it is
unconstitutional.    It is claimed, that under the provisions
of the Act, the expenses of the improvement are to be de-
frayed by a tax, to be levied on the property to be benefited,
and not by an assessment, in any just sense, and that the
tax is void because not assessed and levied as taxes are re-
quired to be under the Constitution.    But we think the Act
provides for an assessment, and not a tax.    It is true that
in section 11 provision is made for the assessment and col-
lection of what is there designated "a tax" upon the lands
to be benefited.    But in section 3 the cost of the improve-
ment is directed to be "assessed" on the lands to be bene-

fited, "in proportion to the benefits accruing therefrom to said several lots," etc.; and in section 4 the lands to be benefited and which "shall be assessed" are particularly described. In section 5 the Board of Public Works is required to make a map showing "each lot and subdivision of land liable to be assessed to pay the cost and expenses of opening said avenue." But independently of this express recognition in terms, that the charge on the land is to be an assessment and not a tax, it sufficiently appears on the face of the Act that the whole scheme contemplates an assessment and not a tax. The two are essentially different in their nature, and designating as a tax that which in its elements is an assessment, can have no effect in determining whether it is one or the other. The question must be decided by the nature of the imposition, and not by the mere name by which it is called. Tested by this rule, the charge in this case is clearly an assessment and not a tax.

It is next objected that it is not competent for the Legislature to impose upon the property to be benefited, a greater burden than will be sufficient to defray the cost of improvement, and it is said that under this Act the property is charged not only with the actual cost of improvement, but with an additional sum sufficient to cover the interest to accrue on the bonds, and such discount as may be suffered in converting them into cash. But instead of requiring the cost of the improvement to be paid in cash during the progress, or on the completion of the work, the Act provides for raising the money by the sale of bonds, payable at a future day; the annual interest on which, and the ultimate redemption of the principal, are provided for by an assessment of the property to be benefited. We do not see on what theory it can be claimed that by this process the property is charged with anything more than the cost of the improvement. The interest on the bonds, and the discount, if any, on the sale of them, are incidental expenses incurred in providing a sufficient fund for the accomplishment of the work, without exacting in cash from the property owners the necessary sum. It is a provision for their benefit, which enables them to pay the cost of the improvement in easy

instalments, instead of paying the whole sum on the completion of the work. As they will have the benefit of the credit, it is but just that they should pay the accruing interest and any discount which may be suffered in the sale of bonds. As before stated, the interest and discount are but incidental expenses of the enterprise, and, upon principle, stand upon the same footing as the compensation of the officers who superintend it.

But it is further claimed that the assessment was made on a wrong basis. Section 11 of the Act provides that the assessment "shall be adjusted and distributed according to the enhanced values of the respective parcels of land as fixed in the said final report by the said Board." The assessment complained of was "adjusted and distributed" upon the respective amounts which the Board reported would be the enhancement in value of the several parcels of land, and not upon the total value of each parcel, as enhanced by the improvement. In other words, the assessment was limited to the increase of values, and excludes from the computation the values of the respective parcels without the improvement. We think this was the correct basis for apportioning the assessment. The theory on which the whole scheme proceeds is that each parcel of land is to be assessed according to the benefit it will receive, and not according to its total value as enhanced by the improvement. A lot worth $1,000 may be enhanced in value $5,000, while another lot worth $10,000, would not be enhanced in value $1,000 worth by the improvement. The intention of the statute clearly is that in such a case each lot shall be assessed according to its increase in value, and not according to the sum total of its value, as enhanced by the improvement.

The Act is also assailed on the further ground that by the fourteenth subdivision of section 4, all public streets and public squares belonging to the United States, or to this State, within the district to be benefited, "shall not be assessed for the cost of opening said avenue:" and it is further provided, that if, at any time before the report of the Board is made to the County Court, "the Govern-

ment of the United States, or the State of California, or the said city and county of San Francisco, shall relinquish or convey, or in any manner transfer its or their title to any portion of said lands to any person or corporation, said lands so transferred to private ownership shall be assessed in the same manner as other lands, now private property, lying within the limits of any of the above described tracts of land."

It appears from the findings that within the district to be benefited there are included certain lands belonging to the United States, the State of California and the city and county of San Francisco, respectively; and it appeared from the report of the Board of Public Works that these lands would be benefited in the sum of $800,000. But in apportioning the assessment they were excluded from the computations, and are not assessed. It is contended that it was not competent for the Legislature to exempt from assessment any lands within the district which would be benefited by the improvement, and that the whole assessment is therefore void.

The argument is that though the lands of the United States, or of the State, or of a municipal corporation, may be exempt from taxation for revenue purposes, they are not necessarily exempt from assessment for local improvements, and that within the district to be benefited the same rule of equality and uniformity which governs taxation for revenue applies to assessments. Whilst it may safely be conceded that all laws of a general nature are required by the Constitution to have an equal and uniform operation upon all persons and property on which they operate at all, it does not therefore result that the property of the Federal or State-Governments, or even of a municipal corporation, which is but a local subdivision of the State government, must necessarily be liable to assessment for a local improvement equally with private property within the district to be benefited. It is well settled in this State and elsewhere that the property of the United States, or of the State, or of a municipal corporation, is not subject to taxation for revenue purposes. (*People v. McCreery*, 34 Cal. 456; *People*

v. *Shearer,* 30 Cal. 645; *Fall* v. *Marysville,* 19 Cal. 391; *Low* v. *Lewis,* 46 Cal. 549.)

A tax "is a charge levied by the sovereign power upon the property of its subjects. It is not a charge upon its own property, nor upon property over which it has no dominion." (*People* v. *McCreery, supra.*) The power of assessment is but a portion of the power of taxation, and if the sovereign cannot tax its own property for general revenue purposes, it cannot be doubted that it may exempt it from assessment or taxation in any form. The rule of equality and uniformity cannot be more stringent in respect to local than to general taxation, and if it has no application in the latter case to the property of the sovereign it can have none in the former. The exemptions from assessment of the property specified in subdivision fourteen, section four of the Act, do not, therefore, render the Act void, or the assessment illegal.

Judgment and order affirmed. Remittitur forthwith.

Mr. Justice McKINSTRY dissented.