*Stallcup, Luthe & Shaffroth, Jas. A. Dawson,* city attorney, for appellee.

---

# HALLETT *v.* CITY OF DENVER.   WEBSTER *v.* SAME.
## CHARLES *v.* SAME.   GHOST *v.* SAME.

*(Superior Court of Denver, June 11, 1883—On Demurrer.)*

1.  SIDEWALKS AND SEWERS MAY BE REQUIRED AT COST OF ABUTTING PROPERTY.  The authorities of cities and towns are vested with power to provide for the construction of both sidewalks and sewers, and assess the cost thereof against the adjacent and benefited property.  Such assessments, when properly made, becomes a lien upon such property, which by proper proceeding may be enforced.

2.  NOTICE AND OPPORTUNITY FOR HEARING.  No such assessment can be enforced, however, without notice to the owner of the property affected, and an opportunity afforded him to be heard as to the work so done, and the amount of the charge against his property.  An ordinance which undertakes to so charge private property without making provision for notice and hearing, is void.

3.  DUE PROCESS OF LAW.  The phrase, "due process of law," as contained in the Federal constitution, is not held to require the intervention of judicial process and a trial in Court, but is met by any proceeding which is in accordance with law and appropriate to the object in view; but a citizen cannot be deprived of his property by an *ex parte* proceeding, though under the forms of law, in which he is neither heard nor allowed an opportunity to be heard.

4.  RELIEF BY CERTIORARI OR INJUNCTION.  A citizen whose property is threatened with sale under an attempt to enforce such lien, when he has no opportunity to be heard, can resort to either *certiorari* or bill in equity and injunction for relief.

5.  ONE CITIZEN MAY NOT, IN SUCH CASE, SUE FOR A COMMUNITY.  In case a private citizen is threatened with, or suffers some peculiar damage to his individual interests, that is, some damage distinct from every other inhabitant, he may maintain his bill for relief in his own name.  But cannot assume to be the champion of the community, and in its behalf challenge the public officers to meet him in the Courts to defend their official acts

DAWSON, J.

These actions, though separate and dissimilar, depend upon substantially the same general principles, and were heard together on demurrers and preliminary motions.

The case first named is a petition for *certiorari,* by which it is sought to bring into this Court for review the record and proceedings of the City of Denver and the several officers and persons named as defendants, of and relating to a tax and assessment for the cost of constructing a sidewalk upon certain city lots, described in the petition as belonging to the petitioner, Moses Hallett, to the end that, for the causes alleged in the petition, the same may be declared void, and that a threatened sale of the lots under said assessment may be enjoined, etc.

The other three are complaints in the nature of bills in equity seeking to enjoin the threatened sale of certain real estate described in the bills for similar taxes or assessments, for the cost of constructing sidewalks under the same authority, and proceedings as are set out in the petition, and also certain taxes or assessments for the cost of constructing sewers, as set out in the bills. And other relief is sought in two of the bills—those of Webster and Charles.

The causes were heard on demurrers to the petition and bills, and motion for writ of *certiorari* and preliminary injunction.

The argument took a wide range and presented the principles bearing upon the questions raised with much clearness and force. But as my conclusions will be guided by the views I entertain of the law, and of the rights and remedies of the parties, as determined by a few propositions, I will not enter the broad and inviting field explored by counsel.

I think it must be accepted as settled law in this country that the authorities of cities and towns are vested with power to provide for the construction of both sidewalks and sewers, to assess the cost thereof against adjacent and benefited property, and that such assessments, when properly made, may become a lien upon such property, and, by proper proceeding, such lien may be enforced by sale in default of payment.

Whether this power be considered as a police regulation, or as incident to the taxing power, or existing under the right of eminent domain, can make no practical difference, as the cost

will amount to the same, whether apportioned or collected under one name or another, or by one mode or another.

By the ruling of the Supreme Court in *Palmer* v. *Way*, (2 Colorado Law Reporter, 385), the power in this State has been held to exist as a police regulation. The question in that case, it is true, related only to the construction of sidewalks; but the same reasoning will apply with at least equal force to sewers. That opinion was much commented on in the argument, and it does not seem to be satisfactory to either side; and the good faith of the proceeding upon which the opinion was procured has been seriously called in question. Whether the parties to that action fought at arms' length, or whether it was a friendly suit, instituted and prosecuted for the sole purpose of securing a settlement of the question raised, I think makes no difference. It is quite common to submit agreed cases with a view to obtain in advance an authentic judicial settlement of doubtful questions, to the end that future complications may be avoided. In so far as the questions in issue in *Palmer* v. *Way* are concerned, I accept the opinion as binding authority, which renders consideration of much that was said and many authorities cited in argument unnecessary. The initial sentence of the opinion states that "the question here presented is the validity of an ordinance of the City of Denver relating to sidewalks,"—the same questioned in these cases—"which," the opinion proceeds, "requires the owners of lots abutting upon streets to construct sidewalks in front of their respective lots at their own expense, in manner provided by the ordinance. If the owners fail, after due notice has been given, the work is to be done by the city, and the expenses of construction are to be assessed against the respective lots fronting on the sidewalk, are made liens upon the same, and are to be placed upon the tax list of the current year, and collected in the same manner that general city taxes are collected. * * * The principal question discussed by the briefs of counsels is, whether under our constitution, the special benefits supposed to result to lots fronting upon a street improvement can be legally assessed upon the lots so benefited, by virtue of the taxing power. * * Upon a careful examination of the authorities cited, and upon principle, we are satisfied that the taxing power does not ex-

tend under the constitution of this State to local or special assessments, except under the constitutional rules."

If the opinion closed here it would be short work to settle these cases. But the opinion goes further. After holding that the ordinance cannot be maintained under the right of eminent domain, it proceeds to consider the question: "Can the ordinance be sustained under the police power?" and adopting the language of Judge Cooley (Cooley on Taxation, 397), concludes as follows: "Custom has much to do in determining whether certain classes of exactions are to be regarded as taxes, or as duties imposed for regulation. If by the common understanding and general custom of the country a particular duty is required as being imposed upon certain individuals, not as their proportionate share in the burden of government, but because of some certain relation to property peculiarly located, or to business particularly troublesome or dangerous, so that a requirement that the duty shall be performed by such individuals is usually regarded as only in the nature of regulation of relative obligations and duties through the neighborhood or municipality, there is no sufficient reason why this may not be considered a mere police regulation, though the proceedings assume the form of taxation. The judgment of the Court below (which denied injunction to restrain the construction of sidewalks under the ordinance) is affirmed."

It must be first determined whether the questions involved in these actions were considered and passed upon by the Supreme Court in the said case. If they were, then as said above, this Court will hold itself bound by them. Certainly the validity of the ordinance as a whole was sustained. But was it sustained in all its parts? I think not. The matter determined in that action, as it seems to me, was the general authority of the city under and by virtue of the police power to require the owners of abutting lots to lay sidewalks in front of them, and upon their failure to do so to cause the same to be done, and assess the cost thereof and make it a lien upon the lots. But the mode and manner of proceeding to make such assessments and enforce such liens, and the rights of individuals affected thereby, in connection with such action, were not considered or determined. It stands as if the validity of the State laws concerning the assessment and collection of the gen-

eral revenue had been called in question before the Court and sustained as a whole. It will scarcely be contended that this would preclude a citizen from calling in question the mode of proceeding under these laws in a given case, in which he might consider his rights had been invaded; as for example, if his assessment had ·been increased by the county commissioners, sitting as a board of supervisors, and tax levied accordingly without notice to him. In such case, though the revenue laws as a whole had been adjudged valid and binding, yet the citizen would clearly have the right to attack the mode of their enforcement.

So in this case, the Supreme Court has held that the city of Denver may require the owners of abutting lots to lay sidewalks in front thereof, and in default thereof, after notice, may cause the same to be laid, and assess the costs as a charge and lien upon said lots. It appears by the pleadings that the city authorities did require the several plaintiffs to lay sidewalks in front of the lots owned by them as set out; this they failed to do, and thereupon the city proceeded to have the same laid (but, it is alleged, not in accordance with the provisions and requirements of the ordinance). And then that the city, together with the other defendants, by certain acts which are fully set out, caused an assessment of certain sums of money as the cost thereof to be placed upon the tax roll as a charge and lien upon the lots owned by plaintiffs respectively, and are about to enforce such lien and sell the lots in satisfaction of such assessments. The plaintiffs further allege, *inter alia,* that they had no notice that any assessment against their said lots had been made, nor that they were required or expected to make payment of the same; and allege that no opportunity was afforded them to be heard as to the propriety, legality or regularity of said proceedings at any time or before any tribunal either as to sidewalks or sewers.

It is contended for the defendants that plaintiffs were entitled to no other or further notice than that contained in the provisions of the charter and ordinances concerning these matters.

Section 6 of the ordinance concerning sidewalks, is as follows:

"The city clerk shall, upon the passage of this ordinance, or

Vol. IV—No. 33

any further enactment of the council directing the construction of sidewalks, publish this ordinance, or such enactment, for ten days in the official newspaper of the city of Denver, and the same shall constitute a notice directing the owner of property adjacent to and abutting upon the sidewalks to construct the same in accordance with the provisions of this ordinance, or other enactment of the city council, within sixty days from the date of its passage."

In the absence of an averment to the contrary it will be assumed that this provision was complied with, and I think such publication was a sufficient notice to the plaintiffs that the laying of the walks was required, and it was their duty to lay them. They failed to do so. The ordinance further provides that if at the expiration of sixty days from the first publication of such notice the sidewalks shall not be built by the owners, then the city contractor shall proceed to lay the same according to certain directions. Sections 11 and 12 of the ordinance provide that "whenever the contractor shall have completed the sidewalk in front of any property * * * the work shall be inspected by the city engineer, and if it is constructed * * in conformity with his contract and the provisions of this ordinance, the city engineer shall issue a certificate to the contractor who has done such work, which shall state the number of feet, linear measurement, constructed by said contractor, the street and the number and description of the lots and block before which such sidewalk is constructed, and the amount due for that fronting upon each lot under the contract between the city and the sidewalk contractor * * *. Upon the presentation of one or more of such certificates to the city clerk, he shall draw a warrant to the contractor entitled to the same upon the sidewalk fund, for the amount therein called for, which shall be signed and registered according to law ; and the city clerk shall retain such certificates for a period of thirty days after the receipt thereof, to afford an opportunity to all parties interested to repay the amounts due upon the lots so improved; and if the amount named therein is not paid within said thirty days, the city clerk shall certify said certificates to the county clerk and recorder; and the respective amounts named in said certificates, together with ten per centum penalty thereon to defray the cost of collection, shall be by the

said county clerk and recorder placed upon the tax list for the current year as a special assessment against each of the lots named in the said certificates, and such assessments shall be collected in the same manner as general city taxes are now collected."

It will be observed that there is no provision in the ordinance for notice of any kind to the lot owners, that a walk has been laid and the cost assessed, and no method prescribed whereby, or tribunal before which he may be heard to question the proceedings in any respect. The clerk, it is true, is required to hold the certificate for thirty days, not, however, in order that the lot owners may call the same in question, or be heard as to the propriety or amount of such assessment, but simply to afford him an opportunity to pay the amount. No time is specified within which these certificates shall be lodged with the city clerk, and no notice of the filing required, and so the lot owner, in order to ascertain whether any assessments have been made against his lots, may be required to attend at the office of the city clerk for full eleven months out of the twelve of each year. And if after having thus become aware of the charge against his lots, he discover an error as to the amount, or in any other particular, and should desire to be heard upon an application to correct the same, the city clerk, acting under the ordinance, would be compelled to say to him : "This certificate is left with me, not to be called in question, but to be paid, so you cannot be heard." If this provision of the ordinance is to be upheld the lot owner is without remedy, and must either pay the amount assessed, or allow the lien upon his lot to be enforced through a sale by the tax collector. The requirements in relation to sewer assessments, though varying in matters of detail, are as to this particular, substantially similar.

While reluctant to make any ruling calculated to retard or embarrass the city authorities in the enforcement of the duty of causing sidewalks and sewers to be constructed throughout the city, I cannot, with my view of the law and the rights of individuals, regard such mode of procedure tolerable. To my mind it amounts to nothing less than depriving the citizen of his property without due process of law; for, while the proceedings complained of purport to be under the forms of law,

that is, pursuant to the ordinances and charter of the city, and
while the phrase "due process of law," as contained in the fed-
eral constitution, is not held to require the intervention of
judicial process and a trial in Court, but is met by any pro-
ceeding which is in accordance with law, and is appropriate
to the object in view; yet, I think, no Court has ever held that
the citizen may be deprived of his property by an *ex parte* pro-
ceeding, though under the forms of law, in which he is neither
heard nor allowed an opportunity to be heard.  The following
is from the text of Cooley on Taxation, (pp. 265, 266):  *  *  *
"In substance the question will be whether the right to be
heard in tax cases, is a right which is indefeasible.  We
should say that notice of proceedings in such cases, and an
opportunity for a hearing of some description, were matters of
constitutional right.  It has been customary to provide for
them as part of what is due process of law for these cases; and
it is not to be assumed that constitutional provisions, carefully
framed for the protection of property, were intended or could
be construed to sanction legislation under which officers might
secretly assess one for any amount in their discretion, without
giving him an opportunity to contest the justice of the assess-
ment.  It has often been very pointedly and emphatically
declared that it is contrary to the first principles of justice
that one should be condemned unheard;  and it has also been
justly observed of taxing officers that it would be a dangerous
precedent to hold that any absolute power resides in them to
tax as they may choose, without giving any notice to the
owner.  It is a power liable to great abuse; and, it might safely
have been added, it is a power that under such circumstances
would be certain to be abused.  The general principles of law
applicable to such tribunals oppose the exercise of any such
power.  This being the case, it is not supposed that the legis-
lature in any doubtful language has undertaken to confer it.
All reasonable presumptions in construction should favor jus-
tice and right.  It is not necessary that the taxpayer shall be
heard before the assessment is made; but a hearing is given
afterwards, either before the assessors themselves, or before
some Court or board of review.  And of the meeting of
that Court or board the taxpayer must in some manner
be informed, either by personal notice or by some general

notice which is reasonably certain to reach him, or which is equivalent, by some general law which fixes the time and place of meeting, and of which he must take notice. The last is the common method of enabling them to be heard. All these provisions, being of vital importance to the taxpayer, must be regarded as compulsory, and a compliance with them as conditions precedent to any further step to charge him with a tax. * * * Such regulations for the protection of individual rights are reasonable, and they are demanded by justice and general convenience. On general principles they must be regarded as mandatory, and a strict observance of their provisions held to be essential." In support of the text the author cites *Philadelphia* v. *Miller*, 49 Pa. St., 440–448; *Darling* v. *Gunn*, 50 Ill., 424; *State* v. *Drake*, 33 N. J., 194: *Thomas Manufacturing Co.* v. *Lathrop*, 7 Conn., 550–555; *Lowell* v. *Wentworth*, 6 Cush., 221; *Kansas Pac. R. R. Co.* v. *Russell*, 8 Kan., 558; *Marsh* v. *Chestnut*, 14 Ill., 223; *Patton* v. *Green*, 13 Cal., 325–329; and numerous other cases.

This language is applied to the collection of the general revenue for the support of the government. With much greater force the reasoning applies to special assessments, such as are presented in these cases; and so the Courts, so far as I have been able to examine the authorities, have uniformly held. In *Stuart* v. *Palmer*, 74 N. Y., 183, which was a case involving an assessment for street improvement, it is said: "The Legislature can no more arbitrarily impose an assessment for property which may be taken and sold than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property, without an opportunity to be heard in defense of his rights; and the constitutional provision that no person shall be deprived of these without due process of law, has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the Federal or State constitutions. * * * Due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce and protect his rights. A hearing, or an op-

portunity to be heard is absolutely essential. We cannot conceive of due process of law without this."

In *Philadelphia* v. *Miller*, 49 Pa. St., 448, it is said that: "Notice, or at least the means of knowledge, is an essential element of every just proceeding which affects rights of person or property." And in *Thomas* v. *Gain*, 35 Mich., 155, the case arising out of an assessment for the construction of a sewer, this language is quoted, and the Court adds—Chief Justice Cooley delivering the opinion—"Parties taxed must have an opportunity to be heard regularly at some stage in the proceedings. Their rights are not to be concluded by proceedings which are wholly *ex parte.*" To the same effect are *The State* v. *The Mayor, etc., of Jersey City*, 24 N. J. Law, 662; *Windsor* v. *McVeigh*, 93 U. S., 274; and many other cases.

The case of *Bonsall* v. *The Mayor, etc., of Lebanon*, 19 Ohio St., 418, is cited as holding to the contrary; but the opinion in that case does not disclose whether or not the lot owners had notice either of the work done or of the assessment of the cost against their lots. That was a case by non-resident lot owners who, it is sometimes said—unjustly, let us hope—have no rights in the matter of taxation which resident authorities deign to respect.

*City of Galveston* v. *Heard*, 54 Texas, 420, is also cited as holding that notice in such cases is not required. But the opinion (page 430) discloses the fact that "the charter prohibited any sale of land for taxes except by decree of the District Court, and upon the bringing of this suit, the defendant was served with notice and afforded an opportunity of showing the invalidity of the assessment, or any defense he might have in law or equity."

So I may say that so far as I have had opportunity to examine the authorities, there is perfect uniformity upon this point—whether by State constitution the legislative authority as to the power of taxation is unlimited, as in New York, or limited as in Colorado.

I cannot, therefore, conclude that the Supreme Court in *Palmer* v. *Way*, intended that the opinion should be interpreted as contravening this unbroken chain of authorities. Evidence to the contrary inheres in the opinion itself. Notwithstanding the provisions of the constitution of Colorado (Secs. 3 and 7,

Art. 10) a very formidable and respectable array of authorities, amounting almost to the weight of authority, would have supported the holding of these assessments as authorized under the taxing power. Yet the Court took the more conservative view that the constitutional limitations must be held to forbid that construction. Hence we cannot indulge the supposition that the Court was less considerate of individual rights settled by uniform authority. I find nothing, either in the opinion or in the briefs of counsel in that case, which suggests that the rights of the citizen touching the mode of arriving at the amount to be charged against his property, or his right to a hearing in relation to its correctness or regularity, was in anywise brought to the attention of the Court. True, the complaint sets out the ordinance in full, and asks the Court to pass upon its constitutionality, but the arguments of the counsel, as well as the opinion, seem directed solely to the right of the city to cause the work to be done and make the expenses a charge and lien upon the property, and not to the mode by which these expenses are to be computed or the lien enforced.

It follows from the foregoing, and without entering into a consideration of the other question raised, that the plaintiffs are entitled to relief, or at least to a hearing in some form; and it only remains to determine in what form and to what extent they may be heard.

Without entering into a discussion of the question, I may say in brief that, upon the state of facts presented in these cases, the unquestionable weight of authority in this country authorizes a review of the acts complained of, on *certiorari*. Dillon's Mun. Corp., 3d Ed., Sec. 926.

I think a state of case is likewise presented which authorizes those plaintiffs, who have so elected, to resort to equity for relief. Plaintiffs Webster and Charles in their bills seek not only to enjoin the sale of their individual property, but to invoke similar relief for all other citizens of the city whose property is about to be sold under these assessments, and also to restrain the city and the other defendants from making any further contracts with regard to the construction of sidewalks or sewers, and to enjoin the issue of any further warrants on account of the Thirteenth and Twentieth sewer districts. It does not appear that there is any threatened danger of the execution of

further contracts. And it is not clear to me that these plaintiffs occupy such relation to other citizens of the city whose property is advertised to be sold as authorize the bills to be maintained in their behalf. It appears by the answer of Williams that a very large proportion of the persons assessed within the Sixteenth and Eighteenth street sewer districts—more than two-thirds—have already voluntarily paid the amounts charged against their property, and that still others are willing and ready to pay. It is not shown to the Court that any considerable number of citizens desire any relief. The property of the plaintiffs, Webster and Charles, lies wholly within the Sixteenth street sewer district, and it is not claimed that either of them owns any property in either of the other districts. These districts for the purposes of the sewer assessments are each separate and distinct—the property in one being liable for no part of the expense of constructing the sewer in any of the others. The principle of local self-government is fundamental in our Republican system, and the citizens of each local sub-division are disposed to manage their own affairs as to them seems meet, and, so long as they do not thereby interfere with the rights of others, are allowed so to do. Therefore, if the lot owners in the Thirteenth, Eighteenth and Twentieth street sewer districts choose to waive their right to be heard in the matter of sewer assessments, other persons should not complain. Moreover, it appears that the construction of the sewer in the Twentieth street district was ordered upon the petition of a majority of those owning real estate in the district. Certainly those persons who so petitioned, with a knowledge of the provisions of the charter and ordinances, of which they are bound to take notice, would not be heard in a Court of equity to question the proceedings. (*Motz* v. *Detroit*, 18 Mich., 495; 1 High on Inj., Sec. 549). If they would not be heard in their own behalf, by what course of reasoning can another be allowed to secure a hearing for them?

But the application to enjoin the issue of further warrants in the Thirteenth and Twentieth street sewer districts is, as I understand it, placed upon the ground that the proceedings in relation to the construction of those sewers, and the issual of warrants, may ultimately be adjudged void, and payment of the amounts assessed against the several lots being refused

by the owners, the whole amount of the warrants so issued, having passed into the hands of innocent purchasers, will become a charge and tax upon the entire city; and in this view these plaintiffs, in behalf of themselves and all other taxpayers of the city, may ask the Court to enjoin the further issue. I think this is a contingency too remote to authorize injunctive relief. It may be gravely questioned whether, as to either sewer or sidewalk warrants, there can be said to be any innocent purchasers. The warrants upon their face state upon what fund and under what ordinances they are drawn, so that all who purchase them are put upon notice that they are payable only out of the special fund, as provided in the charter and ordinances, and not out of the general revenue of the city. Why will not the doctrine of *caveat emptor* apply? But this, by the way.

"In case a private citizen is threatened with or suffers some peculiar damages to his individual interests; that is, some damage distinct from every other inhabitant, he may maintain his bill for an injunction or for relief in his own name. Private persons may thus protect their own interests, but they cannot assume to be the champions of the community and in its behalf challenge the public officers to meet them in the Courts of justice, to defend their official acts." 2 Dil. Mun. Cor., 3d Ed., Sec. 920.

This quotation fully expresses my view as to these cases and the proper relief under the bills exhibited.

It was urged with much earnestness in argument that there is a defect of parties defendant, in that the holders of the warrants should be brought in. I think not. The persons to whom an illegal tax, if collected, would be paid are not necessary parties to suit to enjoin the collection of the tax. (1 High on Injunc., Sec. 500.) In this view, I do not see that either Williams, Burke & Ryan or Way & Sullivan need be compelled against their wishes to defend these proceedings. (1 High on Injunc., Sec. 576.) Williams has chosen to come in by answer. Way & Sullivan and Burke & Ryan demur, and their demurrers will be sustained, upon the ground that they are not necessary parties. The other demurrers will be overruled.

*Certiorari* will be awarded in the case of Moses Hallett, No. 118.

Preliminary injunction will be granted in the other cases; but only to the extent of enjoining the sale of the lots of the respective plaintiffs as set out in the bills, until the final hearing of the cases. The other defendants will be ruled to answer.

*V. D. Markham, J. Q. Charles, J. W. Webster, Jas. H. Brown,* for plaintiffs.

*M. B. Carpenter, J. A. Bentley, J. C. Stallcup,* for defendants.

