Marsh v. Chesnut.

---

EBENEZER MARSH, Plaintiff in Error, v. JOHN A. CHESNUT, Defendant in Error.

ERROR TO MACOUPIN.

| 14 | 223 |
| 21a | 36 |
| 14 | 223 |
| 125 | 494 |
| 14 | 233 |
| 134 | 479 |
| 14 | 223 |
| 172 | 414 |

Where the legislature makes it the imperative duty of an assessor to complete an assessment, and return the same to a particular place on or before a certain day; the duty cannot be dispensed with without the consent of the party taxed, and the assessment is invalid as against the owner of the land.

Such defect cannot be cured by subsequent legislation.

Statutes will not have a retrospective effect given them, unless it clearly appears that such was the intention of the legislature. It is a serious question, whether the legislature possesses the constitutional power to enact laws of such a character.

THIS case was heard at October term, 1851, of the Macoupin Circuit Court, O. C. SKINNER, Judge.

WILLIAMS, and LAWRENCE, and H. W. BILLINGS, for plaintiff in error.

D. A. SMITH, for defendant in error.

TREAT, C. J.   This was an action of ejectment brought by Chesnut against Marsh, to recover the possession of the east half of the south-west quarter of section twenty-one, in township ten north, range seven west, situated in Macoupin county, and containing eighty acres.

On the trial, the plaintiff read in evidence the record of a judgment of the Macoupin circuit court, entered at the May term, 1840, against the premises in question and other real estate, for the taxes due thereon for the year 1839; also a precept issued on the judgment, on the 15th of May, 1840; and a deed from the sheriff to the plaintiff, bearing date the 20th of July, 1842, and reciting a sale of the premises to the plaintiff, on the 18th of May, 1840, for the amount of the tax and costs. The possession of the defendant was admitted.

It was likewise admitted, that the defendant derived title to the land from the patentee, and that no taxes were due thereon at the time of the trial.   The defendant then proved that the assessment for 1839 was not returned to the clerk of the county commissioners' court until the 3d of June of that year.

The jury found the issue in favor of the plaintiff.   The court refused to grant a new trial, and rendered judgment on the verdict.   Marsh sued out a writ of error.

The defendant was in a position to raise any valid objection to the assessment.   It was competent for him to defeat the tax title, by proving that the land had not been "assessed in the time and manner required by law."   The act of the 26th of February, 1839, under which the proceedings were had, made it the duty of the assessor to complete the assessment, and return the same to the clerk of the county commissioners' court, on or before the first day of May; and it authorized parties interested, to apply, at the ensuing June term of that court, for the purpose of having the valuation of their property reduced.   The object of this provision is manifest.   It is, that the owner shall have ample time and opportunity to ascertain the valuation put upon his property by the assessor; and, if deemed excessive, to make application to the court for the correction of the error.   It was the intention of the legislature, that at least one month should intervene between the return of the assessment, and the sitting of the court having the power to revise the doings of the assessor.   This interval of time is allowed the owner to inspect the return, and prepare for the hearing of his objections to the assessment.   This requisition of the statute is clearly imperative.   It is made for the benefit of the owner, and cannot be dispensed with without his consent.   A failure to observe it may seriously injure him.   The

courts have no power to declare it to be directory merely. Such a decision would virtually deprive a party of the protection which the legislature designed to afford him. Under such a construction of the law, the return might not be made until the court had adjourned; or, at so late a day, that he would have no opportunity either to examine the assessment, or make preparation to have it reviewed by the court. In either case, he would lose the benefit of an appeal from the assessment; for the statute expressly provides, that no application to reduce the valuation shall be made after the June term of the court. When this assessment was made, the law required the county commissioners' court to commence its session on the first Monday of June; and the first Monday of June, 1839, was the third day of that month; so that the return of the assessor was not, in fact, made until the term of the court had commenced. The defendant had, therefore, no previous opportunity to inspect the return and prepare an application for a reduction of the assessment. We have no doubt that this direction to the assessor was intended to be compulsory; and that a failure by him to comply with it, renders the assessment invalid, as against the owner of the land.

The proceedings prescribed by the revenue laws are of a special and summary character, and contrary to the course of the common law. The result may often be to deprive a man of his property without any actual knowledge by him of the proceedings against it. It is a sound and inflexible rule of law, that when special proceedings are authorized by statute, by which the estate of one man may be divested and transferred to another, every material provision of the statute must be complied with. The owner has the right to insist upon a strict performance of all the material requirements; and especially of those designed for his security, and the non-observance of which may operate to his prejudice. On this principle alone, the direction to the assessor to make his return by a given day is compulsory, and its performance is indispensable to the validity of the assessment. Without a valid assessment, the subsequent proceedings necessarily fall for the want of a basis upon which to rest.

The case of the Thames Manufacturing Company v. Lathrop, 7 Connecticut, 550, is directly in point. In that case, the statute required the assessor to return the assessment to the town clerk, on or before the first day of December; and it required the board of review to hear all appeals from the proceedings of the assessor, on the first Monday of January thereafter. The assessment was not returned to the clerk until the

20th of December, and the court held it to be illegal and void.

Hosmer, C. J., said: " This direction is imperative, and is alone alterable by the legislature. The court must take the law as they find it, and cannot say that a return after the 1st of December is valid, unless they assume the character of lawmakers. The reason of this legislative provision is very manifest. It is for the general benefit of every inhabitant of our towns, that each may inspect the list of his estate, and if he believes that injustice is done him, that he may appeal for its correction to the board of review. That a time for the return of the lists should be limited, the general convenience demands; and that it should be sufficiently early for universal inspection, and a preparation for a future hearing before the board of review, is perfectly obvious. On this principle, the legislature appointed the 1st of December, as the ultimate period of the return. This branch of the law is imperative, and as unchangeable by the court, as any other, and were it within their competency, it would be difficult to assign a period more reasonable. That the return should be punctually made, is indispensable. A different principle would nullify the law, and produce the general inconvenience arising from an unlimited return. No person in such case could know when he might inspect his list; and if the return was late, no time either for reflection or preparation for a review could be had."

But it is insisted that this defect in the proceedings was cured by subsequent legislation, and the acts of the 8th of February, 1849, and the 15th of February, 1851, are relied on to sustain the position. The former act is in these words: " That all assessments of property for taxes made in the year 1848, and prior years, and which were not completed within the time required by law, be, and the same are, hereby declared to be as good, valid, and effectual as if they had been made and returned in strict conformity to law; and the auditor shall have power to remit the interest, where it shall appear that the collector did not receive the books within the time required by law." The latter act reads thus: " That when any county or township assessor has heretofore failed, or shall hereafter fail, to complete or finish his assessments in the time required by law, such failure shall not vitiate such assessment, but the same shall be as legal and valid as if the same had been completed in the time required by law : Provided, that this act shall not release any such assessor of any county or township, from any liability imposed by law for the non-fulfilment of his duty."

As a general principle, a statute operates *in futuro* only, and

does not apply to past transactions. A retrospective effect is not given it, especially where injustice or inconvenience will result, unless it clearly appears that such was the intention of the legislature. And such an intention must be manifested by clear and unequivocal expressions, and not be left to inference or conjecture. If there is any doubt as to the real design, the statute must be construed to have a prospective effect only. Thompson v. Alexander, 11 Illinois, 54, and the cases there cited. Unless it is imperatively demanded, the statutes in question should not receive the construction contended for. They were passed long after the proceedings in this case were concluded. Laws of such a character ought not to have a retrospective operation. Under the law in force when the proceedings were had, the purchaser at the sale acquired no title to the land. The assessment being invalid, there was no foundation to support the subsequent proceedings. The owner had a perfect defence to any claim of title under them. He had only to point out the defect in the assessment, to destroy the effect of the sheriff's deed. It may be, that he relied on this very defect as a defence to any attempt to assert title under the proceedings; and that he therefore declined to redeem from the sale, or take some other effectual course to defeat the claim altogether. But if the provisions of these statutes are to retroact upon the proceedings, the case is entirely changed. What before was insufficient to pass the title, becomes competent for the purpose. The objection upon which the owner confidently relied for protection, is entirely swept away by *ex post facto* legislation. Legislation of this kind may well be characterized as replete with injustice. It is indeed a serious question, whether the legislature possesses the constitutional power to enact laws of such a character. The courts should hesitate long before coming to the conclusion, that these statutes were designed to have a retrospective operation.

But they may be so construed as not to embrace cases like the present, and, at the same time, full effect be given to their provisions. We think it was the intention of the legislature to legalize assessments that had not been perfected within the time prescribed, and upon which further proceedings were to be had; and not to interfere with assessments where nothing remained to be done under them. This was the full scope and design of these statutes. The first clause of the act of 1849, might indicate an intention to legalize all such assessments, whether proceedings under them had been consummated or not; but the concluding clause clearly qualifies what precedes, and restricts its operation to assessments upon which further

proceedings are necessary. The object of the act is to validate this class of assessments, so that the taxes charged upon them may be collected without another assessment. It is also to release the collector from the payment of interest for failing to collect and pay over the revenue, where the failure is occasioned either by the fault of the assessor in not completing the assessment within the time limited, or that of the clerk in not delivering him the tax list in season. The act of 1851 was passed for a similar purpose, and must receive the same interpretation. Its provisions are applicable to assessments upon which further proceedings are necessary to collect the taxes; and not to cases of defective assessments, where the proceedings are concluded, and the purposes of the revenue laws are accomplished. The law was not enacted for the purpose of confirming the titles of purchasers at tax sales, but for the purpose of facilitating the collection of the revenue. It is proper to state in reference to both of these laws, that frequent applications were made to the legislature to legalize defective assessments, in order that the collection of the taxes might be enforced; and that the legislature, acting upon the conviction that the failure of the assessor to make his return within the time designated, vitiated the assessment, and prevented the collection of the taxes, from time to time passed special acts curing defects in particular assessments. The statutes in question were doubtless enacted to remove this difficulty in all cases, and thus obviate the necessity for any further legislation on the subject. The first act did not apply to assessments to be made in future. Hence the necessity for the second act, which embraces assessments to be made after its passage. The case of The Thames Manufacturing Company v. Lathrop, before cited, is a strong authority upon this branch of this case. After a compulsory payment of the taxes in that case, the legislature passed an act providing that where assessors had theretofore failed to make their returns within the time prescribed, the assessments should not be adjudged void; but the taxes charged thereon might be levied and collected. The court held that the act had no application to the case before it, but was limited in its operation to cases in which neither a levy nor a sale had been made. And the selectmen, who issued the warrant for the collection of the taxes, were held liable in trespass for the acts of the collector under the process.

On the whole case, our opinion is, that the assessment was invalid, and that it was not cured by subsequent legislation. It follows, that the plaintiff acquired no title under the pro-

ceedings, and that the court erred in not awarding a new trial.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*