## TRIMMIER v. BOMAR.

1. A finding of fact by the Circuit judge, on a motion made before him for a preliminary injunction, sustained.
2. *Doubted,* whether the managers appointed to hold an election on the question of county subscription to the Greenwood, Laurens and Spartanburg Railroad Company, were required by the act of 1880 (17 *Stat.* 497) to take any oath.
3. The requirements of the statute authorizing an election to determine the question of a county subscription to a railroad company having been substantially complied with, and the majority at the election so held having been admittedly in favor of such subscription, an injunction to restrain the issue of county bonds therefor *was properly refused.*
4. The machinery provided for the conduct of elections, in so far as it is not necessary to determine the result, is directory and not mandatory. The great matter in elections is the result.
5. Where the taxing power is involved, such power can be exercised only in the manner and form prescribed by the statute; but where the question is raised only as to a power that depends upon the result of an election, the sole inquiry then is, whether the election has been held and the result ascertained.

Before WITHERSPOON, J., Spartanburg, March, 1883.

This was an action by F. M. Trimmier, Lewis Yarborough, J. T. Pool, Alfred Tolleson and Joseph Walker against J. E. Bomar *et al.,* county commissioners of Spartanburg county, and the Greenwood, Laurens and Spartanburg Railroad Company.

The decretal order appealed from, was as follows:

This action was brought by plaintiffs, tax-payers of Spartanburg county, to restrain the county commissioners of said county from issuing certain bonds of said county in aid of the Greenwood, Laurens and Spartanburg Railroad Company. The allegations of the complaint will be more specifically pointed out in the statement of facts on motion hereafter decided. At the commencement of the action an *ex parte* order was made, requiring the county commissioners of said county to show cause, before me, why they should not be enjoined from issuing said bonds until the final hearing of the cause, and restraining

them from issuing same until further orders of the court. The defendants county commissioners have filed their answer to the complaint, which it is unnecessary to set out in this decree. Upon due notice, the Greenwood, Laurens and Spartanburg Railroad Company was made a party defendant, and allowed to appear and join in the return to the rule.

The return to the rule was heard before me at chambers at Union Court House, on the 6th and 7th of the present month. The affidavits submitted for and against the rule are voluminous, and it is impracticable to state the same fully. It is only necessary to say that the only matters in controversy were certain alleged irregularities at the voting precincts in said county, at an election held pursuant to act of general assembly of December 24th, 1880, authorizing a subscription by the county of Spartanburg to the capital stock of the Greenwood, Laurens and Spartanburg Railroad Company, in that the managers and voters were not sworn according to law, and the oaths of managers were not filed in the clerk's office, and an alleged irregularity in counting the votes and the proper certificate of the result of said election to the county commissioners of said county.

As to the irregularities, either in the failure of the managers or of the voters at said election to take the oaths alleged to be necessary, no testimony has been offered by plaintiffs except as to five precincts. Such testimony was insufficient to sustain the allegations of the complaint, and was contradicted by positive affidavits on the part of defendants, except as to two small precincts in said county, and at one of these the record shows that at least the chairman of the board was properly sworn as a manager. But, admitting that the plaintiffs had shown fatal irregularities at any or all of said five precincts, so as to necessitate their being thrown out, the majority of votes for the subscription would still be more than one thousand. The case of the plaintiffs must therefore, necessarily, rest upon the alleged irregularity with reference to the counting of the votes and certification of the result of the election.

It is unnecessary now to consider what was under the act, the proper mode of counting the votes and certifying the result. The fact of a majority of thirteen hundred and eleven votes for

subscription is not disputed by plaintiffs, and is conclusively established by testimony for defendants. It is further clearly established that within three days after the election, on July 12th, 1881, it appeared to the county commissioners of said county, by the original returns from all the precincts in said county, then in their possession, and a tabulated statement of same made and certified to by a number of the managers at said precincts, that the majority for subscription was as hereinbefore stated, and that the board on said day adopted a resolution as above stated. No fraud or misconduct on the part of any officer connected with said election or any voter is alleged or proven. The sole question therefore is, whether, upon a technical irregularity which itself is disputed and is not satisfactorily established, the will of the qualified voters of Spartanburg county upon the question of subscription to the railroad company shall be defeated. On this question I can have no doubt. The purpose of this election was to discover the will of the voters of the county in the premises. That has been conclusively shown, and it ought not to be defeated by minute objections and mere irregularities of manner and form even when well established.

The other grounds for issuing the injunction, alleged in the complaint, are so clearly untenable as not to require extended discussion. I therefore have no hesitation in deciding, from the testimony, that there is nothing to invalidate the election, and that there has been such substantial compliance with the requirements of the act as should authorize and require the county commissioners to issue the said bonds in pursuance of the terms of subscription to said railroad company.

In additition to what has already been said, I also consider that plaintiffs are estopped from bringing this action. From the date of the election in July, 1881, the plaintiffs have quietly rested, making no complaint and taking no action, although all the matters upon which they now rely were more accessible to them and susceptible of proof than now. In the meantime rights have vested in third parties. The county commissioners, on September 6th, 1881, subscribed the sum of $75,000, in bonds of said company, to the capital stock of the said railroad company, agreeing to issue said bonds as the work of construction of said road shall

progress.   The defendant railroad company having received said subscription and obligation to issue bonds of the county therefor, have, in advance, pledged said bonds to certain contractors for the work of construction of said railroad through Spartanburg county.   Some of these bonds have already been issued, and others should be pursuant to the terms of said contract.   The contract was *bona fide*, and it seems to me that the promises under such contract stand in a court of equity on an equal footing with *bona fide* holders of bonds already issued.

It is therefore ordered and adjudged, that the rule herein against the defendants, requiring them to show cause why an injunction should not issue, restraining the defendants county commissioners from issuing the aforesaid bonds, be and the same is hereby discharged, and the order for injunction heretofore granted herein be dissolved.

From this order the plaintiffs appealed, upon the ground stated in the opinion and upon two others, denying an estoppel.

*Mr. Stanyarne Wilson*, for appellants.

The action of the county commissioners is not *res judicata*.   In the cases from 1 *McCord* 59, 2 *Treadw. Con. R.* 646, and 2 *Rich.* 7, there were special statutes for political elections, constituting the officers judicial officers as to the elections, and with no conditions precedent as here.   In 16 *S. C.* 236, and 17 *Id.* 563, the matters were between parties litigant, and within the jurisdiction of the county commissioners.   *Big. Estop.* 9.   The principles upon which municipal decision has been sustained are, that where municipal officers have, by statute, power to determine whether the conditions precedent to the issue of the bonds have been complied with, and they so determine and place their recital to that effect in the bonds, this decision is final as to a *bona fide* holder for value before maturity, but not as to the original payees or purchasers with notice.   21 *How.* 539 ; *Burroughs Pub. Sec.* 272–320, 360 ; 4 *Otto* 429 ; *Cooley Const. Lim.* 196. There were fatal irregularities in the conduct of the election and making the return.   The citations for respondents all relate to political elections.   *Cheves* 269.   In elections involving the tax-

ing power there is nothing pre-existing, and a strict compliance is necessary. *Burroughs Pub. Sec.* 262; *Dill. Mun. Corp.*, § 108; 19 *Barb.* 558; *Pot. Dwar.* 223, 225, *note;* 5 *Mich.* 154; 14 *Ill.* 223; 2 *Cranch* 127; 1 *Paine* 406; *Ang. & A. Corp.* 103; 27 *Ill.* 309. Instances of fatal irregularities, 19 *Wis.* 298; 16 *Wall.* 660; 70 *N. Y.* 28; 67 *Ill.* 61; 13 *Gray* 83.

*Messrs. J. H. Evins, S. J. Simpson, E. H. Bobo* and *J. S. R. Thomson,* upon the points considered by this court, cited 17 *Stat.* 497, §§ 7, 8, 9; 14 *Barb.* 259; 10 *Minn.* 107; 10 *Cal.* 352; 1 *Sneed* 637; *McCra. Cont. El.* 123–131, 145, 175, 304, 305, 554; *Pot. Dwar.* 226; 5 *S. C.* 264; *Pierce Railr. L.* 104; *Jones Railr. Sec.,* §§ 280–1; 4 *Otto* 640; *Cheves* 269; *High Inj.,* § 9; 13 *La. Ann.* 175; 21 *Pick.* 148; *Harp.* 139; 104 *Ill.* 343.

January 15th, 1884. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. By an act of the legislature approved December 24th, 1880, (17 *Stat.* 497,) the county commissioners for Spartanburg county were authorized to subscribe to the capital stock of the Greenwood, Laurens and Spartanburg Railroad Company, such sum as the qualified electors of said county should determine by an election to be held under said act, and to that end the act further provided machinery for the election, among other things enacting, in section 8, "That it should be the duty of the managers to make returns, and meet at their court house and count the votes and declare the result, as in other elections, which result should be certified in writing by the chairman of each board of managers to the chairman" of the board of county commissioners. On July 9th, 1881, an election was held under this act, and out of a vote of 4,435 in the whole, the vote for subscription was 2,873, a majority of over 1,300 in favor thereof. The amount to be subscribed according to this vote was $75,000, which subscription was immediately thereafter made, and bonds to the amount of $10,500 issued and turned over to the company.

In 1881, a convention of the tax payers of the county was held for the purpose of electing commissioners to represent the

stock in a meeting of the stockholders of this railroad company, at which the plaintiff Trimmier was elected as one of three of said commissioners. Trimmier, Yarborough and Pool were members of this convention. The plaintiff Walker was elected one of the directors of the road, and it was upon his motion that a committee was appointed to receive the county bonds and to sell them; and Tolleson participated in the election. The subscription of the county was received by the company. A contract for grading was made, which was commenced, and $10,500 of the bonds issued before the action below was instituted, which was in February, 1883.

The purpose of the action was to obtain a permanent injunction, restraining the commissioners from issuing the bonds of the county, in payment of the said subscription, and that another election should be ordered, if necessary. The grounds upon which this relief was asked, were—first, that the plaintiffs were the owners of over $100,000 worth of property located in said county liable to be taxed for the payment of said bonds; second, that the subscription was illegal and void, because the act authorizing the election had not been complied with in the following particulars, to wit: (1) That the managers had not been sworn; (2) that their oaths had not been filed with the clerk; (3) that the managers had not assembled at the court house after the election, as required by section 8, *supra*, and, (4) that the chairman of each of said boards had not certified the result in writing to the board of county commissioners, as also required. The result of the election as above stated was not denied, nor was there any allegation of unfairness, fraud or irregularity in said election, either as to its inauguration or to its conduct, except in the particulars above stated.

The complaint having been filed, the case was presented to Judge Witherspoon at chambers, for a temporary injunction until the hearing of the cause, whereupon Judge Witherspoon issued an order requiring the defendants to show cause before him at Spartanburg on March 21st, thereafter, why the prayer of the plaintiffs should not be granted with leave on their part to appear at any prior day, upon ten days' notice, at the same time granting a restraining order against the defendants upon certain con-

ditions. The defendants answered, and on March 6th, 1883, after due notice, a motion was made and heard before Judge Witherspoon to dissolve this injunction, who, after full investigation with voluminous affidavits on both sides, granted the motion, holding as a matter of fact, that the allegation in reference to the failure of the managers to take the oath alleged to be necessary, had not only not been sustained by the testimony, but was contradicted by positive affidavits on the part of the defendants, except as to two small precincts, which, if thrown out, would still leave a majority of votes for the subscription of over 1,000 ; and as to the two other alleged irregularities, to wit, of the managers not meeting at the court house, and not certifying in writing the result of the election, by the chairmen of the different boards, he held, that while not satisfactorily established, yet, if having occurred, they were nothing more than mere technical irregularities which ought not and could not affect the result, in the face of the overwhelming fact, not denied, that a large majority of the vote had sustained the subscription. He also held the plaintiffs estopped from bringing the action.

The appeal seeks to reverse the rulings of the Circuit judge, first, " Because his Honor held that it did not appear from the pleadings and evidence that there were such fatal defects and irregularities, in the conduct of the election and making the return, as to prevent the issue of the bonds of the county." This ground involves two questions : first, the existence of the alleged irregularities, which is a question of fact; and, secondly, if any, their effect, which is a question of law. This being a case in chancery, both of these questions are within our jurisdiction. The Circuit judge held as to the alleged irregularities, in reference to the oaths of the managers, that they were not sustained by the testimony, and therefore could not be considered as to their legal effect. Under the law governing the findings of fact by a Circuit judge when brought before this court for review, we see no cause for disturbing the finding here. Upon a careful examination of the affidavits, it will be seen that this finding is neither not without any testimony to support it nor opposed to the preponderance of the testimony. It must, therefore, be sustained, and this exception dismissed without further

consideration, except, it may be remarked, that it is not at all certain that the managers under the act were required to take any oath.

We think that the Circuit judge might well have found, as a matter of fact, that the other alleged irregularities had not been sustained, because it is pretty clear from testimony that all of the requirements of section 8, as to making the returns, the meeting of the managers, counting the votes, declaring the result and making the certificate, were substantially complied with; sufficiently so, at least, to have warranted him, in our opinion, in dissolving the injunction upon that ground. He assumed, however, that there may have been some irregularity; he held that yet this was merely technical, and was not of a character to invalidate the election. In this we concur. In elections the great matter is the result. When this is clearly ascertained it sweeps away all technicalities. The machinery provided should be observed, but in so far as it is not necessary to determine the result, it is directory and not mandatory. Certainly manner and form should not be allowed to defeat the undoubted will of the people clearly expressed. This would be indeed subordinating and sacrificing the substance to the shadow.

There is no allegation or pretense that, had section 8 been literally and exactly complied with in its entire particularity, the majority declared would have been diminished or the result altered in the least. What ground then is there for complaint? There seems to be no doubt that the managers desired and attempted to discharge the duty imposed upon them faithfully and fully as far as they understood it. It appears from the testimony of Mr. Kirby, the chairman of the county commissioners, that the managers met at the court house; that returns from all the precincts were received, with a tabulated statement of the same; that at said meeting the returns were recanvassed and verified; that to the best of his recollection the returns from the different precincts were duly signed by the managers thereof, and that no question as to the correctness of said returns or the general result had ever been made, suggested or heard of until this action. Under such circumstances it is needless to refer to authorities by which to sustain the result.

Such authorities may be found, however, abundantly, in *McCra.. Cont. El.* §§ 123–131, 145, 175, 304, 305 and 554.

The appellants' counsel seems to admit this, but contends that this doctrine, while applying to political elections, yet that it does not apply to the exercise of a taxing power. This may be true where such power is conferred to be exercised in a certain way, and according to certain prescribed forms or conditions. Where the power is vested to be thus exercised, it is a nullity when attempted through any other channel than that prescribed, and the authorities relied on by appellants are full to this point. *Burroughs Pub. Sec.* 262; *Dill. Mun. Corp.,* § 108; *People* v. *Schermerhorn,* 19 *Barb.* 558; *Pot. Dwar.* 225, *note; Clark* v. *Crane,* 5 *Mich.* 154; *Marsh* v. *Chesnut,* 14 *Ill.* 223; *Head* v. *Insurance Company,* 2 *Cranch* 127 and others cited in the argument of counsel.

But that is not the character of this case. Here there is no contention that the county commissioners exercised the power of issuing the bonds already issued irregularly, or that they are likely to do so as to the bonds yet to be issued. The question is, Has any power to the end of issuing the bonds at all been conferred upon them? It is not a question of the proper exercise of a power, but it is whether a power has been created. The legislature has declared by act that the power might be created by election by the qualified voters of the county, and the question is, Has such election been held and the result ascertained according to law? This question is a very different one from that raised by the appellant, and must be decided upon different principles. It is a question as to the will of the people, to be heard through the ballot-box, and we think the authorities to be found in *McCrary, supra,* apply.

This disposes of the case, and it is not necessary to discuss the question of estoppel.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.