CITY OF PENSACOLA, APPELLANT, VS. WILLIAM T. BELL, APPELLEE.

1. A petition filed under section 4 of chapter 151, Laws of Florida, to have a tax assessment declared illegal, must show that the illegality existed at the time it is filed. (Where it shows that an alleged illegality has been corrected, it is demurrable.)

2. The duties of the Tax Assessor of a city are, under the statutes, of a clerical nature. He does not value property, but adopts the valuations made by the county and State officers for the same tax year.

3. The failure of a City Assessor to complete the assessment roll during the tax year for which taxes have been levied by the proper municipal authorities does not, under the provisions of the statute regulating municipal assessments, defeat the collection of such taxes.

Appeal from the Circuit Court for Escambia county upon a rehearing.

The facts of the case are stated in the preceding and the following opinion.

*J. D. Thompson* for Appellant.

*W. A. Blount* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court :

This case was originally decided at the last June term. A petition for a rehearing was then filed by the appellee, and we determined to grant a rehearing, and continued the case.

The act of 1883 (chapter 3477, approved March 5th,) provides in section 1 that the City Council shall have power to raise by tax and assessment on all real and personal property all sums of money which may be required, for the purposes therein named, and to enforce the receipt and collection of the same in the manner provided by the laws of the State for the assessment and collection of State taxes ; and provides in section two that the valuation of property as made by the officers of the State in each year shall be adopted by all municipal governments as the true valuation of the property within their respective corporations, and then fixes one per cent. upon such valuation as the maximum rate of taxation, with a qualification as to taxes for payment of principal and interest of outstanding bonds. Chapter 3468 provides for the levy of a special tax not exceeding two mills on the real and personal property for the use and maintenance of fire companies.

The general revenue act of 1883 provides that the Assessor of each county shall complete the assessment of real and personal property on or before the first Monday of August in every year, and requires that on said last named day the Board of County Commissioners shall meet with the Assessor at the Clerk's office for the purpose of reviewing and equalizing the assessment, and they may continue in session for such purpose from day to day for one week, or so long as shall be necessary. The County Commissioners can raise or lower the valuation of real estate, and when they raise a valuation of one who has not applied to have the valuation made by the Assessor reduced, they are required to give such person fifteen days notice of a meeting at which he

can be heard.   They are required to meet on the first Monday of September of each year to hear such complaints. The statute makes it the duty of the Assessor immediately after the assessment has been reviewed and equalized, and the amount of taxes to be raised for State, county and school purposes has been determined upon or levied, (which the Commissioners were required by chapter 3414 to do at their meeting for correcting and reviewing the assessment) to carry out the several amounts of such taxes in separate columns prepared for that purpose in the assessment roll, setting opposite to the several sums set down as the valuation of real and personal estate the respective sums assessed as taxes thereon in dollars and cents, and to add up all the columns of assessment and taxes contained in the roll, and to make two fair copies of the same, and the Commissioners are required to meet on the first Monday in October, and to examine and compare the original and the copies and correct all mistakes and inaccuracies in description or of other character, and certify that they have been so examined and are correct.

There is no question made as to the levy or determination by the City Council of the amount of taxes to be raised or the time of making it or as to the amount demanded of petitioner.   As stated in the original opinion the taxes are for 1883, and the complaint is that the City Assessor did not, as required by law, before delivering the assessment roll to the Collector calculate and carry out the several assessment of such taxes in separate columns prepared for that purpose in the assessment roll, setting opposite to the several sums set down as the valuation of the real and personal estate as taxes thereon in dollars and cents, and that such " calculation and carrying out of said taxes " was not done until September, 1884, when the said city caused the same to be made and done as required by law.   It is not alleged

that the roll did not contain the proper description and valuations of real and personal property as adopted from the county assessment. It is *argued* in the petition for a rehearing that the Tax Collector is elected annually, that the exercise of his functions is confined to a certain period ending on the first Monday of October of each year, that at this time the assessment roll passes beyond his control and beyond any power of correction by him or by the municipality.

In so far as the annual election of the *Collector* is concerned we do not see that this affects the legality of an *assessment*. Where an unexecuted assessment roll and warrant goes into the hands of a succeeding Collector he can enforce it, and there is nothing in the statute that makes a delay to a period subsequent to the first Monday in October a bar to the collection of city taxes which have been previously assessed. Assuming that an assessment of taxes is to be made between the first Monday in October in one year and the similar day in the next, we are unable to see that this has not been so made. The State tax year of 1883 began on March 1st of that year and ended the last day of February, 1884. We have held that the city tax year is the same, (State *ex rel.* vs. Mayor, &c., of Jacksonville, 22 Fla., instead of from October 1st, 1883, to October 1st, 1884,) and it is evident that the assessment roll before us was not perfected till after the expiration of the year. The adoption of the county assessment of any tax year may become effectual on October 1st, or subsequent day, when such county assessment is perfected by the Commisssoners at their meeting for comparing, examining and certifying. A reasonable construction of chapter 3477 is that the county assessment is not in such shape as to be a city or town standard of valuations until it is certified to at the meeting which convenes on the first Monday in October, for

until then all the descriptions are not final; and the descriptions show what the valuations relate to, and they are in fact an inseparable element of the same as an assessment. Assuming that between the first Monday in October, 1883, and the perfection of the assessment roll in September, 1884, there was a change in the City Assessor, and that an assessment roll, imperfect for the reasons alleged, was commenced by one person holding the office, and that it was perfected by another person, his successor, we see no reason why it should not be held valid. We find nothing in the statute invalidating it on this account. There is a very vital distinction in the case of a city and a county assessment. The former in so far as the duty of the City Assessor is concerned is purely clerical and arithmetical; no power or discretion as to reductions is exercised by him. A mere failure upon the part of the Assessor to make the calculations and extend them on the book and make the footings should not defeat the public interest when the delay has done and can do no harm to the legal rights of persons. A tax payer has no day before city officers for a hearing as to valuations, the loss of which without his own fault might render illegal the assessment and hence it is entirely immaterial to him whether the city assessment roll may be made later than is regular, or by one assessor or another. His day for a hearing is before the county officers, as well as to city taxes as to those of the county and State, and is anterior to the inception of the duties of the assessor. If tax payers do not look after the valuations when the assessments are being made by the county officers, they will lose their right to question valuations. There is no complaint here as against the collector's warrant as distinguished from the assessment roll; and we do not see where the ground for complaint is if the assessment of the city is made partly by one and partly by another

Assessor. No statutory provision invalidating an assessment made like the one in question has been shown to us, and the delay indicated does not seem to us sufficient to have such effect, considering the character of our statute.

The following cases sustain the views announced above: Pond vs. Negus, 3 Mass., 230 ; Williams vs. School District, 21 Pick., 75 ; Board vs. McCarthy, 27 Ind., 475 ; People vs. Allen, 6 Wend., 486 ; Gale vs. Mead, 2 Denio, 160 ; Smith vs. Crittenden, 16 Mich., 152. See also Gebhartt vs. Gibson, 1 Penn. St., 224, and discriminate as to 14 Ill., 223 ; 15 Ibid, 202 ; Cooley on Taxation, page 256 ; Burroughs on Taxation, 399 ; 36 Cal., 411.

The case will be remanded under the directions given at the foot of the former opinion.