## JACK v. GERBER.

No. 2426.    Opinion Filed April 1, 1913.

**APPEAL AND ERROR—Questions of Fact.** No error having been committed by the trial court in the admission or rejection of evidence, and the cause having been submitted under proper instructions to the jury, there being evidence reasonably supporting the verdict, the judgment thereon will be affirmed on review in this court.

(Syllabus by the Court.)

*Error from District Court, Alfalfa County;*
*M. C. Garber, Judge.*

Action by Phillip Gerber against Anscelmo Jack. Judgment for plaintiff, and defendant brings error. Affirmed.

*Wilson & Ross,* for plaintiff in error.

*E. W. Snoddy,* for defendant in error.

WILLIAMS, J.    The defendant in error, Phillip Gerber, as plaintiff, sued the plaintiff in error, Anscelmo Jack, as defendant, in the lower court on December 18, 1909, for the recovery of a certain tract of land, it being a part of the southwest quarter of section twenty-three, township twenty-eight north, and range eleven west, of the Indian Base and Meridian, held by said defendant under a claim that the same was a part of the northwest quarter of said section.

It is admitted that the plaintiff was the legal and equitable owner in fee simple of said southwest quarter, and the defendant of the northwest quarter. The tract in dispute is one-half mile long east and west and twelve feet wide at the east end and twenty-four feet at the west end, lying along the boundary line between the quarter sections.

It was essential to determine the boundary between the two said quarter sections in order to adjudicate the owner of said strip of land. Trial was had on March 9, 1910, on the issues as framed, and a verdict rendered in favor of the plaintiff. Defendant in due time filed a motion for a new trial, which was overruled, and exceptions saved by proceeding in error. The defendant seeks to have set aside the judgment awarded in favor of the plaintiff.

The only question essential to be determined in this case is as to whether a certain survey made by the county surveyor was binding upon the plaintiff. It is conceded by counsel for the defendant (plaintiff in error) that if he was bound by said survey he could not prevail in the action in the lower court, and in that extent the court did not err in giving the instruction complained of.

The county surveyor is required to "make, in a good and professional manner, all surveys of land within his county which he may be called upon by the owner thereof, or his representative, or directed by the district or probate courts, or the board of county commissioners, to make" (section 1786, Comp. Laws 1909; section 1731, St. Okla. 1890), and to "transcribe the field notes and plats of such surveys into convenient and substantial record books," etc. Such books are "competent evidence in all courts of the facts therein set forth." Section 1787, Comp. Laws 1909; section 1300, Wilson's Rev. & Ann. St. 1903.

"The resurvey and subdivision of lands by all surveyors shall be according to the laws of the United States," etc. (Section 1788, Comp. Laws 1909; section 1301, Wilson's Rev. & Ann. St. 1903.)

"Whenever the survey is made of lines or monuments in dispute between parties * * * the chainmen must be of disinterested persons, approved and sworn by the surveyor, to measure justly and impartially to the best of their skill and ability." (Section 1789, Comp. Laws 1909; section 1302, Wilson's Rev. & Ann. St. 1903.)

"The record of the field notes and plats shall show distinctly of what piece of land it is a survey, at whose request it was made, what owners were notified and present at the date of the survey, the name of the chainmen, and that they were approved and sworn to by the surveyor when so required by law. * * * " (Section 1790, Comp. Laws, 1909; section 1303, Wilson's Rev. & Ann. St. 1903.)

"In retracing lines or making any survey he shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give weight to partial and doubtful evidence or appearances of monuments, the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments." (Section 1791, Comp. Laws 1909; section 1304, Wilson's Rev. & Ann. St. 1903.)

"When two or more owners of adjacent or adjoining tracts of land shall desire to permanently establish the corners and boundaries thereof, they shall notify the county surveyor to make a survey thereof and establish such corners and boundaries, and shall furnish him the names and addresses of all persons residing in the county and elsewhere, so far as known, who may be affected by such survey. * * * Due proof of service of notice, as herein provided, shall be made and entered of record in the office of the county surveyor." (Section 1797, Comp. Laws 1909; section 1310, Wilson's Rev. & Ann. St. 1903.)

The county surveyor, on the day mentioned in the notice, or the next day thereafter, shall proceed to make the survey, but he may, for good cause shown, adjourn from time to time. He may, upon the application of any persons interested in the survey, or upon his motion, take the evidence of any witness or witnesses who may be produced to prove any point material to such survey, and such testimony shall be reduced to writing, and, together with an accurate plat and field notes of such survey, shall be filed in the office of the county surveyor within thirty days after the completion of such survey. Section 1798, Comp. Laws 1909; section 1311, Wilson's Rev. & Ann. St. 1903.

"Upon the filing of the report of each survey, any person served with notice of the survey, as herein provided, and being aggrieved by such survey, or the costs thereof, may at any time within thirty days after the filing of such report appeal to the district court of the county. * * * " (Section 1799, Comp. Laws 1909; section 1312, Wilson's Rev. & Ann. St. 1903.)

"The corners and boundaries established in any survey, made in pursuance of any agreement, or in any survey made in conformity with the provisions of this act, where no appeal is taken from the surveyor's report  *  *  *  shall be held and considered as permanently established, and shall not thereafter be changed." (Section 1801, Comp. Laws 1909; section 1314, Wilson's Rev. & Ann. St. 1903.)

When any survey made in pursuance of an agreement, or of legal notice, shall have become final, it shall be the duty of the county surveyor to record his report thereof, in the record of permanent surveys. Section 1802, Comp. Laws 1909; section 1315, Wilson's Rev. & Ann. St. 1903.

The court instructed the jury as follows:

"You are instructed that this controversy arises over the location of the half section line between the plaintiff and the defendant and this is an issue of fact for you to determine in this case. The records of the Gilmore and Haviland surveys have been admitted in evidence, together with the testimony of the several witnesses who have appeared upon the stand relative to monuments of title in relation thereto. You are instructed that neither one of the surveys are conclusive or binding upon you, but you may take them into consideration, together with all the other evidence in the case, in determining where said half section line should be located."

This instruction was excepted to by the defendant, who asked the following instruction, which was refused:

"You are instructed that, if you find from the evidence that William Haviland, while surveyor of Woods county, surveyed the disputed boundary in question and that the plaintiff Gerber participated in such survey, then he is bound by the result of such survey, unless you further find that on account of fraud and misrepresentation on the part of the county surveyor of Woods county, the plaintiff was prevented from taking his appeal."

The record of permanent surveys as introduced in evidence states that the survey was made in pursuance of a petition filed August 1, 1905, when the petition is dated August 4, 1905. The record describes the survey as one upon application of N. L. Travers, S. W. ¼, and W. H. Travers, S. E. ¼, and A. Jack. No land is described as belonging to the latter. The record recites that the county surveyor fixed August 5th as the date on

which to begin the survey and continued until August 15th to serve further notice, and —— day of August, as the day upon which he would begin to make the survey. The record in another place shows that he fixed August 14th as the day to begin, and swore two chainmen upon that day. The record also shows that he began on August 6th and continued until August 10th and completed on August 16th. It does not disclose at whose request the survey was made, as it states that it was on the application of N. L. and W. H. Travers, whose land is described, and A. Jack, whose land is not described, while the petition for the survey seems to have been signed by S. J. Graham, Ans. Jack, and Phillip Gerber. The county surveyor appears to have lumped two surveys in one record—the one in dispute and one founded upon the petition signed by N. L. and W. H. Travers. The law evidently contemplates that the record of each survey shall be kept separate, so that upon the filing of the report any person may appeal from such survey and will not have to appeal from more than one survey. The record does not show a copy of the field notes in any form. The petition upon which this survey was had does not give the names and addresses of any persons who might have been affected by the survey. It is disclosed by the record that on August 7, 1905, the county surveyor mailed notices for the parties affected to Phillip Gerber as his deputy; no other evidence being contained in the record to show service. The record of parmanent surveys is so defective as to be unreliable; the provisions of the statute not appearing to have been strictly followed.

In *Holliday v. Maddox,* 39 Kan. 359, 18 Pac. 299, it is said:

"The survey made by Walton as county surveyor was not offered for the purpose of showing that a legal and binding survey was made, but was offered and received, and it is all that is now claimed for it, that it was some evidence tending to show the correct line and corner. It was of the same character and of the same weight as that of the survey made by County Surveyor Wood, years later. It is not claimed for either of these surveys that they were made in strict compliance with the requirements of the statute. They were simply the surveys made by the county surveyors at the request of somebody in interest. As far as the evidence shows, no notice was given as required

by law to make the survey binding. Each party could have made as many surveys as he desired, but surveys so made would not be binding, though they would be competent as evidence, and would be received by the court for what they were worth."

In *Schwab v. Stoneback,* 49 Kan. 607, 31 Pac. 142, it is said:

"It will be observed that the statute requires the surveyor to make the survey at the time mentioned in the notice, and he must file the evidence taken together with an accurate plat of the land surveyed, in the office of register of deeds of the county, within ten days after the completion of the survey. This he did not do. There was nothing to show an adjournment for any definite time. We do not think that there was such a compliance with the statute as made the survey and plat filed by the surveyor on the 30th of April conclusive. The subsequent section of the statute gives any person interested the right to appeal from the report of the surveyor to the district court within thirty days from the filing of the report. No one could tell when to take an appeal, if the surveyor were allowed any indefinite time in which to conclude the survey and file his report. It was, therefore, material error for the court to hold that the survey made by the county surveyor was final, conclusive, and binding, and refuse to admit any evidence as to the location of the division line between lots seven and ten prior to the survey.

"The report and plat were doubtless competent evidence, as any other private survey might have been, but it was not conclusive, for the reason that the statute was not strictly pursued. * * *

" 'It is a sound and inflexible rule of law, that where special proceedings are authorized by statute, by which the estate of the one may be diverted and transferred to another, every material provision of the statute must be complied with. The owner has a right to insist upon a strict performance of all the material requirements, especially those designed for his security, and the nonobservance of which may operate to his prejudice.' "

See, also, *Marsh v. Chesnut,* 14 Ill. 223.

We conclude that the cause was submitted to the jury under proper instructions.

The conclusion herein reached seems also to be in harmony with *Watkins v. Havighorst,* 13 Okla. 128, 74 Pac. 318.

It follows that the judgment of the lower court must be affirmed.

HAYES, C. J., and KANE and TURNER, JJ., concur; DUNN, J., not participating.