THE STATE, OTHNIEL JOHNSON, PROSECUTOR, v. DANIEL LOPER.

1.  The provisions of the act for the better enforcement in Maurice River Cove and Delaware Bay, of the act entitled " An act for the preservation of clams and oysters," is not repugnant to section 8, article I., of

the constitution of the United States, as an attempt to regulate commerce between the states.

2. The imposition of a license fee upon all boats engaged in planting, or taking oysters in the said places, is not obnoxious to the requirement in the state constitution, that property shall be assessed under general laws and by uniform rules, according to its true value.

3. The penalty for planting or taking oysters without first obtaining a license, included the condemnation and sale of the unlicensed boat and appliances used for planting and taking oysters.

On *certiorari.*

This writ brings up the condemnation of a sloop, belonging to the prosecutor, for a violation of the provisions of "An act for the better enforcement, in Maurice River cove and Delaware bay, of the act entitled 'An act for the preservation of clams and oysters,'" &c., and the supplements thereto. *Rev., p.* 140.

Argued at November Term, 1883, before Justices REED and PARKER.

For the prosecutor, *Leaming & Black.*

The opinion of the court was delivered by

REED, J.   The attack upon the proceedings brought up, is confined almost entirely to objections directed against the constitutionality of the acts under which the sloop of the prosecutor was condemned.   The first reason objects to the validity of the act, on the ground that it is repugnant to section 8, article I., of the constitution of the United States, in that it attempts to regulate commerce between the states. The substance of the legislation attacked by this and other reasons is, that every boat lawfully engaged in catching, planting or growing oysters on the flats and grounds of Delaware bay and Maurice River cove, adjoining the counties of Cumberland and Cape May, shall be assessed a fee in proportion to her tonnage.

In executing the purpose of the act, the collector of the oyster fund is empowered to assess and collect all moneys due from the several boats, and to issue a license, duly certified by himself, to each captain of a boat lawfully engaged in the business of catching, planting and growing oysters in the said bay or cove, that shall pay the taxes required by the act, and to refuse to license all who do not comply with the provisions of the statute, or are not entitled by the law of the state to catch, plant or grow oysters in the said bay or cove.

Any person found planting or taking oysters without license, is liable to the penalties of the act. The fund raised by this assessment is to be used to pay a special officer to detect and prevent the violation of the oyster laws, and whenever the fund arising from the execution of the act and its supplements exceeds $2000, the surplus is to be paid to the school fund.

As a foundation for the argument that this legislation embodies an attempt to regulate interstate commerce, evidence was taken to show that the boat condemned for catching oysters without a license was carrying oysters to Philadelphia.

But if this were so, I do not perceive in what way this statute affects trade between the states. So far as I have studied the object or the text of the act, it has nothing whatever to do with trade. The statute imposed no tax upon a vessel because she carries oysters to Baltimore or Philadelphia. The assessment is imposed because a vessel is employed in the planting or growing or catching oysters in the designated localities.

No discrimination is designated between those who catch for a home, and those who take for a foreign market, and neither the design nor the result of the legislation is to regulate any commercial transaction in oysters.

There is no foundation whatever for this objection.

The second reason attacks the statute as one imposing a special tax, and as repugnant to the present constitutional requirement that property shall be assessed under general laws and by uniform rules, according to its true value.

This raises the question whether the assessment of the boats lawfully engaged in planting and taking oysters in the designated places, is the imposition of a tax upon property within the constitutional significance.

The obvious design of the legislation of which this assessment is a part, is to protect a precarious kind of property against the depredations of irresponsible or improper persons.

The oystering ground included within the district covered by the provisions of the act, stretches over a large area. Within it lie oysters belonging to innumerable private owners, who, by conformity with the statutory requirements, have acquired a special property in their plants. There is also a considerable ground open to the common right of all citizens of the state to fish. To properly guard these against marauders, either in the shape of foreign crews or native thieves, requires the exercise of constant vigilance, entailing an expense which hardly any single owner can afford to incur.

The primary object of the statute is to raise a fund by which these extensive grounds can be guarded. The act provides for the appointment of a special officer, with power to employ men and steamboats, and with power to arrest any person found violating the provisions of the Oyster acts. All the expenses incurred in the execution of these powers, are to be paid out of the fund arising from the assessment of the boats. Another object of the act is to equip all boats lawfully engaged in oystering in Delaware bay or Maurice River cove, with a license, as a means of distinguishing legal from illegal craft.

To effectuate this, all licensed boats are numbered, and required to wear their respective numbers on the middle of the mainsail.

I think, under this condition of fact, that the imposition is within the class of imposts levied upon occupations. The entire business of planting and catching oysters is executed by means of boats of small tonnage, manned by adequate crews.

The business is represented by the boats, and its extent is measured by the number of boats, their tonnage, and the size

of their crews. An assessment upon the boats is an assessment upon the occupation is which they are engaged. This class of assessments in imposed under the police power inherent in the state, and is not a tax. As a manifestation of the simple exercise of the police power, the fees should have been limited to an amount sufficient to provide for the expense of issuing the license for regulating the licensed business, and for employing proper officers to supervise the conduct of the licensees.

But the exercise of the police power may be, by legislative sanction, made the means of raising a revenue, nor then does it become a tax within the meaning of the constitutional requirement of uniformity.

The license system, by which the privilege of selling ardent or malt liquors is conferred for a fee, is an example of an impost as a police regulation, yet from which a revenue arises.

The act concerning inns and taverns prescribes no rule of uniformity in fixing the amount of license fees to be paid, but only fixes the extreme sum between which the amount must be placed. If the constitutional rule of uniformity applies to these impositions, it must follow that the exercise of this power, by a multitude of bodies, at their discretion—in some cases unlimited—is void, and they must fall, and with them the power conferred upon almost every municipal corporation in the state to exact license fees from trades and occupations, the fees arising from which go into the general treasury.

The constitutions of other states contain provisions analogous to the requirement contained in ours, and wherever the courts have been called upon to construe them in regard to their application to assessments upon occupations in the form of license fees, they have been held inapplicable to the latter class of imposts.

The almost, if not quite, unbroken course of decision has been in this direction, that these impositions are not taxes within the purview of the constitutional requirements. *People* v. *Thurber*, 13 *Ill.* 554; *Cole* v. *Hall*, 103 *Ill.* 30; *Chilvers* v. *People*, 11 *Mich.* 43; *Youngblood* v. *Sexton*, 32 *Mich.*

406; *State* v. *Henry*, 26 *Ark.* 523; *Bohler* v. *Schneider*, 49 *Ga.* 195; *People* v. *McCreery*, 34 *Cal.* 432; *Cooley on Taxation*, §§ 401, 402, 427.

It is again urged that there was no authority in the statute to condemn and sell an unlicensed boat, because the clause referring to the penalty for planting or taking oysters is too vague in its designation of the punishment. It provides that such unlicensed planter or taker of oysters shall be considered a trespasser, and subject to all the fines and penalties imposed by the act entitled "An act for the preservation of clams and oysters," and the supplements thereto. This obviously refers to the punishment which the original act inflicts upon a person who, without right under the seventh section, takes oysters in any of the bays in this state. It is a penalty of $20 and a forfeiture of the boat, and all the appliances for oystering. This is the only cognate offence mentioned in the former act, and this penalty, with its prescribed details for enforcement, was within the view of the draftsman of the latter act. The allusion to the condemnation and sale of boats and property, and the payment of the proceeds thereof to the collector, to be added to the fund mentioned in the first section of the latter act, exhibits clearly that this penalty was the punishment pointed out by the seventh section of the same act, and includes the condemnation and sale of this boat.

The remaining reasons do not seem to be well taken, and I think the proceedings should be affirmed.